194 P.3d 977 (2008)
Arthur T. LANE, Kenneth Gorohoff and Walter L. Williams, individually and on behalf of the class of all persons similarly situated, Respondents/Cross-Appellants,
v.
The CITY OF SEATTLE, Respondent/Cross-Respondent,
King County Fire District No. 2; King County Fire District No. 4 (a.k.a. Shoreline Fire Department); North Highline Fire District No. 11; King County Fire District No. 16 (a.k.a. Northshore Fire Department); King County Fire District No. 20; The City of Shoreline, a Washington municipal corporation; and King County, a Washington municipal corporation, Respondents,
The City of Burien, a Washington municipal corporation; The City of Lake Forest Park, a Washington municipal corporation, Appellants.
No. 80204-1.
Supreme Court of Washington, En Banc.
Argued February 28, 2008.
Decided October 16, 2008.
*978 Michael Paul Ruark, Attorney at Law, Bellevue, WA, Brian Richard Paige, Itron Inc., Liberty Lake, WA, for Appellants.
Gregory Colin Narver, Suzanne Lieberman Smith, Seattle City Attorneys Office, William Howard Patton, Foster Pepper PLLC, King County Prosecutor's Office, Margaret A. Pahl, Howard Phillip Schneiderman, William E. Blakney, King County Administrative Building, Seattle, WA, Ian Richard Sievers, City of Shoreline Attorney, Shoreline, WA, Kinnon William Williams, Joseph Halder Marshall, Williams & Williams, PSC, Bothell, WA, for Respondents.
David Florian Jurca, Jennifer Suzanne Divine, Connie K. Haslam, Helsell Fetterman LLP, Seattle, WA, for Respondents/Cross-Appellants.
Brian K. Snure, Snure Law Office PSC, Des Moines, WA, for Amicus Curiae on behalf of Washington Fire Commissioner's Association.
J.M. JOHNSON, J.
¶ 1 In this case we must decide who will pay for fire hydrants in the city of Seattle and its suburbs. Seattle Public Utility (SPU) used to pay for them, passing the cost along to its ratepayers. The ratepayers object and want Seattle to foot the bill. If Seattle has to pay for its hydrants, it wants Lake Forest Park to pay for the hydrants in Lake Forest Park. Lake Forest Park, in turn, wants fire districts in Lake Forest Park to pay. The fire districts want someone, anyone, else to pay. On top of all that, the ratepayers want interest on improper past hydrant payments they recover and want Seattle's new tax on SPU declared illegal. Finally, the fire districts claim they are no longer even parties to the litigation.
¶ 2 We affirm the trial court on most issues. The court correctly held that providing fire hydrants is a government responsibility *979 for which a government must pay, that Seattle's new tax on SPU is constitutional, and that municipality Lake Forest Park must pay for hydrants within its boundary. The trial court erred only when it failed to give the claiming ratepayers the statutory interest rate on the invalid hydrant fees.

I
¶ 3 For years, SPU paid for hydrants by charging its water ratepayers a flat hydrant fee added to their water charges. In 2003, this court held that Seattle City Light could not charge its ratepayers for streetlights. Providing streetlights is a government function, and the court held that a municipal government must pay out of the city's general fund. Okeson v. City of Seattle, 150 Wash.2d 540, 78 P.3d 1279 (2003). Recognizing the legal equivalence between hydrants and streetlights expressed in that decision (and argued by the city), Seattle had SPU stop charging ratepayers for hydrants. Instead, Seattle began to pay for the hydrants out of its general fund. To make up the cost, Seattle raised taxes on SPU, which led SPU to raise rates on water ratepayers to make up the difference.
¶ 4 SPU also provides local hydrants to areas outside the city of Seattle and concluded that those municipal governments should pay their share. SPU sent a bill for hydrants to Lake Forest Park, Burien, and to local fire districts, all of which refused to pay. SPU then sued Lake Forest Park and Burien for payment and later joined the fire districts.
¶ 5 Meanwhile, a class made up of ratepayers ("Lane et al.," as representatives, hereinafter "Lane") sued SPU for hydrant payments made by ratepayers for the preceding three years. The statute of limitations limits that claim to three years. RCW 4.16.080(6). Lane also sued Seattle to enjoin the newly raised city taxes on SPU, which had resulted in SPU's raising its rates on ratepayers.
¶ 6 After a lengthy pretrial process, each party moved for summary judgment. The trial judge held (1) SPU could not charge ratepayers to pay for hydrants; (2) Seattle's tax on SPU was valid; (3) SPU had to pay back the Lane ratepayers, but only at one percent interest; (4) Lake Forest Park and Burien had to pay Seattle for their share of the hydrant costs; and (5) the fire districts had no obligation to pay. Each of these rulings has been challenged. We granted direct review.
¶ 7 After review, but before oral argument, Burien decided it had spent too much money litigating and withdrew. Thus, Burien was the only party originally stating a claim against the fire districts. Without an opposing party appealing their judgment, the fire districts are no longer parties, and we do not reach the issue between Burien and the fire districts. The remaining issues are resolved below.

II

A. SPU Cannot Charge Ratepayers for Hydrants, which Are a General Government Responsibility

¶ 8 "No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied," WASH. CONST. art. VII, § 5. If providing hydrants is a government function, and if charging ratepayers for those hydrants is a tax, not a fee, the charge violates this part of the constitution. Seattle imposed a "charge" rather than a tax, which it was not authorized by law to impose.
¶ 9 We treat governments differently if they are acting as governments or as businesses. Okeson, 150 Wash.2d at 549, 78 P.3d 1279. We review most government decisions to determine whether they had a rational basis and occasionally use this standard to strike down a government decision. E.g., Associated Grocers, Inc. v. State, 114 Wash.2d 182, 187-88, 787 P.2d 22 (1990); O'Meara v. Wash. State Bd. Against Discrimination, 58 Wash.2d 793, 799, 365 P.2d 1 (1961); In re Hendrickson, 12 Wash.2d 600, 612, 123 P.2d 322 (1942). In contrast, we review business decisions under the business judgment rule and infrequently reverse a business decision. See Scott v. Trans-System, Inc., 148 Wash.2d 701, 709, 64 P.3d 1 (2003). We must first decide if providing *980 hydrants is a government responsibility or a proprietary responsibility.
¶ 10 It is conceded that Okeson decides that question. We held that streetlights are a government function and strongly suggested that providing hydrants is the same. We confirm that holding today.
¶ 11 The next step is deciding whether charging ratepayers to pay for hydrants was a tax or a fee, since a city must be authorized by statute to impose a tax but has broader power to impose a fee. Okeson, 150 Wash.2d at 550, 78 P.3d 1279. We have created a three-factor test to decide whether a charge is a tax or a fee; no single factor determines the matter. Covell v. City of Seattle, 127 Wash.2d 874, 879, 905 P.2d 324 (1995). The three factors are the purpose of the cost, where the money raised is spent, and whether people pay the cost because they use the service. Id.
¶ 12 Our decision here directly follows our decision in Okeson. There, the purpose of the cost was to increase revenue for the city and not to regulate the installed streetlights, indicating a tax. Okeson, 150 Wash.2d at 553, 78 P.3d 1279. The money did go into a streetlight fund, which made it more like a fee. Id. But ratepayers bore the same streetlight cost no matter how much electricity they used, leaning toward tax. Id. at 554, 78 P.3d 1279. Since all citizens may use and benefit from lighted areas, we held the charge to be an invalid tax. Id.
¶ 13 Here, the purpose of charging ratepayers a hydrant charge is also to increase revenue for the city and not to regulate hydrants or water usage, indicating a tax. The money goes to a hydrant fund, making it more like a fee. But, ratepayers pay the same fixed hydrant cost whether they use hydrants or not, indicating a tax. All benefit by having water available to put out fires. Moreover, we had expressly discussed fire hydrants as an example of government services in Okeson. Seattle had argued that the Okeson streetlights were just like hydrants, and SPU had always charged ratepayers for hydrants. The hydrant issue was not before us, but the argument of Seattle and implication of our decision were clear: for purposes of deciding a tax or fee, hydrants are very much like streetlights. Id. at 552, 78 P.3d 1279. As in Okeson, the charge here is a tax.
¶ 14 Lake Forest Park tries to distinguish Okeson. It points out that water companies within cities must, by statute, provide hydrants (RCW 80.28.010), but no similar law requires electric companies to provide streetlights. This is not determinative. After all, state law requires police to report accidents (RCW 46.52.070) and school districts to educate special education children (RCW 28A.155.040), but these laws do not justify taxing such transactions.
¶ 15 Lake Forest Park also claims a relationship between hydrant charges and user benefit by pointing out that houses near hydrants may have lower insurance rates. This might be more persuasive if SPU charged a different cost based on proximity to hydrants. The direct benefit of a hydrant system is enhanced fire suppression, which is a shared benefit, and the record shows no differential.
¶ 16 Amici also point to three cases where Washington courts upheld charges on customers when first connecting to waterworks. Landmark Dev., Inc. v. City of Roy, 138 Wash.2d 561, 980 P.2d 1234 (1999); Hillis Homes, Inc. v. Pub. Util. Dist. No. 1, 105 Wash.2d 288, 714 P.2d 1163 (1986); Irvin Water Dist. No. 6 v. Jackson P'ship, 109 Wash.App. 113, 34 P.3d 840 (2001). These cases are inapposite. One-time connection fees are different from monthly hydrant charges. Connection fees capture start-up costs for new customers, which are costs of the waterlines for water service. Hydrant fees capture the costs of hydrants, which are government costs.
¶ 17 Finally, Lake Forest Park says, "the heights of irony will be scaled if SPU can purchase art for its facilities and recover the cost in rates . . . but cannot recover the cost of complying with lawful regulations." Br. of Appellant Lake Forest Park at 9-10. This makes a mountain out of an irony molehill. The question is not whether there will be art and hydrants, but who must pay for them. Art for public facilities is a business expense (sometimes imposed by statute or ordinance). *981 Hydrants, like streetlights, are a government expense for which a government must pay.
¶ 18 Thus, charges for hydrants are taxes, not fees. Since "[n]o tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied." WASH. CONST. art. VII, § 5. Since Seattle did not declare the charge to be a tax until 2005 or state a lawful object of a tax or statutory authority, the imposition was unconstitutional. See Okeson, 150 Wash.2d at 556, 78 P.3d 1279.

B. Lane Has Standing To Challenge Seattle's Tax and SPU's Rate Increases, but Those Increases Are Not Invalid

¶ 19 Seattle recognized the legal similarity between streetlights and hydrants, and so, in 2003, began paying for hydrants out of the general fund. To pay, Seattle either had to raise tax revenue or take funds from other services. The city council decided to raise revenue. It did so by raising the tax rate on SPU from 10 to 14 percent. Since it wholly controls SPU, it had SPU make up the difference by raising rates on customers. This situation has a similar result for nearly every party involved as if SPU just charged ratepayers for hydrants, with two exceptions: for residents of other areas, their local government will repay the charges; for Seattle ratepayers, the tax charge is now subject to referendum or political efforts to change, including election of council members opposing the tax. Lane still objects. This issue raises two subissues: whether Lane has standing and whether the tax is legal.

1. Lane Has Standing To Challenge Seattle's Tax on SPU

¶ 20 Seattle challenged Lane's standing to challenge the tax at trial but has dropped the argument here. However, standing is a matter of our jurisdiction. Without jurisdiction, we cannot hear a case, even if every party concedes standing. High Tide Seafoods v. State, 106 Wash.2d 695, 702, 725 P.2d 411 (1986).[1]
¶ 21 To have standing, a party must be in a law's zone of interest and must suffer some harm. Nelson v. Appleway Chevrolet, Inc., 160 Wash.2d 173, 186, 157 P.3d 847 (2007). Lane obviously has suffered harm; if his argument is right, he must pay more in taxes than is legally allowed. His zone of interest argument, though, is on shakier ground because he does not directly pay the tax. After all, he is complaining about Seattle's tax on the water utility SPU. If Lane has standing at all, it is only as a taxpayer interested in making his government follow the law.
¶ 22 Lane points us to RCW 80.04.440, which allows any person harmed by a public utility's unlawful acts to bring suit. Even though Lane's challenge is to Seattle's tax on SPU and not to SPU's illegal acts, he rests on RCW 7.24.020, allowing for declaratory judgments of laws directly affecting a party.
¶ 23 The standing issue here was analyzed in our decision in Nelson. There, we held that a car buyer has standing to challenge a tax applied directly to his dealer and seller because the buyer ultimately paid the tax. Nelson, 160 Wash.2d at 186, 157 P.3d 847. In the same way, the tax on SPU is passed on to Lane directly, and so he is within the interest zone of RCW 80.04.440. He has standing to challenge the tax and rate increase.

2. Seattle's Tax and SPU's Rate Increases Are Constitutional

¶ 24 Lane complains that Seattle is frustrating the holding in Okeson. He argues that raising taxes on SPU and passing the increases along to ratepayers is just the same as SPU charging ratepayers for hydrants. *982 The problem with the argument is that Okeson did not go so far as Lane would take it.
¶ 25 We voided the charge in Okeson because Seattle did not adopt the charge as a lawfully authorized tax, violating article VII, section 5 of the state constitution, and because a tax would have exceeded the six percent statutory limit. Either reason was sufficient to support our holding in its entirety. Okeson, 150 Wash.2d at 556-57, 78 P.3d 1279. We simply held that if Seattle wanted to charge Seattle City Light ratepayers for streetlights, it would have to comply with statutes in enacting the tax (with the attendant possibility of a referendum, WASH. CONST. art. II, § 1(b)). Such tax, if adopted, would be subject to the applicable statutes and a six percent total cap.
¶ 26 Seattle has complied here. It explicitly said it was taxing SPU, the tax was properly adopted, and the tax expressly stated it was subject to referendum. Also, the six percent limit referenced in Okeson does not apply to taxes on businesses providing water. RCW 35.21.710; RCW 82.16.010(4). Seattle has statutory authority to impose this tax on SPU (RCW 35.22.280(32)).
¶ 27 Lane's whole argument rests on our constitution's requirement that "[n]o tax shall be levied except in pursuance of law;. . . ." WASH. CONST. art. VII, § 5. He argues that imposing a tax with the same effect as SPU's charging ratepayers for hydrants is contrary to the law announced in Okeson.
¶ 28 This argument fails for the same reason as above. The law is not that Seattle must charge for hydrants to a broad range of taxpayers. Instead, it is simply that cities must have statutory authority to impose taxes and must enact them properly as "taxes." This tax meets both requirements. The tax and the resulting rate raise are lawful.

C. SPU Must Pay the Statutory Interest Rate on Back Payments

¶ 29 SPU illegally charged ratepayers for hydrant costs before 2005, so it had to refund the charges for three years as allowed by the applicable statute of limitations. Lane wants his payments to be with interest; Seattle opposes. The trial court gave Lane interest at one percent. Lane appealed, saying he is entitled to more. Seattle says he is entitled to none (or, at most, one percent).
¶ 30 Governments cannot be sued for money without their consent. Architectural Woods, Inc. v. State, 92 Wash.2d 521, 526, 598 P.2d 1372 (1979). More to the point, local governments cannot be sued for interest without the State's consent. Our Lady of Lourdes Hosp. v. Franklin County, 120 Wash.2d 439, 455-56, 842 P.2d 956 (1993). But absent sovereign immunity, parties must pay 12 percent interest on judicial awards from the time of judgment to the time of payment. RCW 4.56.110(4); RCW 19.52.020. They must also pay 12 percent on the time from the injury to the judgment if the damages are liquidated, that is, if it is "possible to compute the amount with exactness, without reliance on opinion or discretion." Prier v. Refrigeration Eng'g Co., 74 Wash.2d 25, 32, 442 P.2d 621 (1968); RCW 19.52.020. The damages here are clearly liquidated because they are based only on the amounts customers wrongly paid. So if SPU is not immune from judgment, it must pay 12 percent interest on both the pre- and post-judgment award.
¶ 31 Lane offers three reasons why he should be awarded statutory interest on his refund payments from SPU, and if he is correct on any of them, he receives interest at the judgment rate. His best argument is that a statute waives immunity for claims against government-run utilities, allowing interest on part of those claims.
¶ 32 RCW 80.04.440 allows people to sue water companies for "all loss, damage or injury" resulting from an illegal act. On its face, "all loss" includes interest. Depriving a party of money for a time deprives him of its productive use during that time. "Justice delayed is justice denied" is literally true for money. If a losing party has wrongfully kept another's money at 12 percent interest for six years before giving it back, it is the same as taking the lost value. "All loss, damage or injury" includes interest on money improperly taken or withheld.
*983 ¶ 33 Seattle argues that the statute does not include the word "interest." Neither does it expressly include "medical bills" or "lost work time" or "profits," but the phrase "all loss, damage or injury" has been held to include those. See, e.g., Nat'l Union Ins. Co. of Pittsburgh, Pa. v. Puget Sound Power & Light, 94 Wash.App. 163, 168, 175, 972 P.2d 481 (1999). Seattle says we would have to infer state consent to interest payments from the statute. However, "all loss, damage or injury" is clear, broad, and inclusive. We have no authority to judicially amend the broad statute to read "all loss (except interest)."
¶ 34 The trial court seems to have split the difference and held the statute waived immunity for interest, but not for interest at the judgment rate. Instead, the trial court gave one percent interest because the monthly amounts were so small that a reasonable investor could have placed the money only in a low interest account. We reject this approach for two reasons.
¶ 35 First, RCW 80.04.440 says nothing about a reasonably prudent investor. It consents to suit for all "loss, damage or injury" and does not exempt from those losses the usual judgment interest. Second, any reasonably prudent investor test invites complex factual questions about investment returns. The legislature has decided the number by setting the statutory rate of 12 percent, RCW 4.56.110(4); RCW 19.52.020 (set for all judgments), and we have no reason to deviate from it. "All loss" includes interest at the judgment rate. SPU must pay back the payments at the statutory rate.

D. Lake Forest Park Is Liable for Hydrant Payments

¶ 36 If Seattle must pay for hydrants located in Seattle, it asks Lake Forest Park to pay for those hydrants located in Lake Forest Park. Seattle argues, and the trial court held, that RCW 43.09.210 makes the cities liable. The statute reads: "All service rendered by . . . one department . . . to another, shall be paid for at its true and full value by the department . . . receiving the same, . . . ." RCW 43.09.210. This law applies to services that one government body provides for another, including when one city provides another city with services.[2]Cf. State v. Grays Harbor County, 98 Wash.2d 606, 608, 656 P.2d 1084 (1983) ("The word `department' plainly refers to an administrative division or branch of government, . . . ."). Since SPU provided a service to Lake Forest Park, Lake Forest Park is liable for SPU's cost.
¶ 37 Moreover, SPU provided the hydrants because Lake Forest Park required it to do so by ordinance. LAKE FOREST PARK MUN.CODE 15.04.015(A)(3). Since providing hydrants is governmental, see above, Lake Forest Park also consented to pay for the hydrants when it passed this requirement. True, Lake Forest Park passed the ordinance before Okeson, but this does not avoid its liability.
¶ 38 Lake Forest Park would apply the three-part test from Covell to argue that Seattle would be imposing a tax on another city, which it cannot do. The Covell factors are the purpose of the cost: where the money raised is allocated and whether the cities pay the cost because they use the service. 127 Wash.2d at 879, 905 P.2d 324.
¶ 39 The purpose of charging Lake Forest Park for hydrants is clearly to raise money, indicating a tax. There is no evidence that the funds are segregated, also leaning toward a tax. But, most importantly, here there is a direct relationship between the costs charged and the service provided. Lake Forest Park requires SPU to provide hydrants, and SPU is charging just for the costs of the hydrants required by Lake Forest Park. We hold that the hydrant charge to Lake Forest Park is not a tax, but rather a cost of providing a government service, which Lake Forest Park must pay.
¶ 40 Lake Forest Park argues that if we require it to pay for hydrants, cities may extend their utility services to other jurisdictions without consent and then charge the cost. This possibility is speculative (and improbable). SPU will not likely install fire hydrants where uninvited. Right-of-way problems alone would block this eventuality. SPU operates in Lake Forest Park only with that city's permission, and it is providing a service only Lake Forest Park required.
*984 ¶ 41 Lake Forest Park also argues that even if it has to pay for hydrants, it should have to pay only for costs before January 1, 2005. On that day, Seattle's tax on SPU started. Under Lake Forest Park's theory, since Seattle already recovered the costs of hydrants starting in 2005, it would get a windfall if Lake Forest Park also had to pay. We reject this argument. RCW 43.09.210 draws no distinction that would exempt pre-2005 charges.
¶ 42 RCW 43.09.210 requires Lake Forest Park to pay for the hydrants within its boundary.

III
¶ 43 In summary, we hold that (1) providing hydrants is a government responsibility for which the general government of the area must pay; (2) charging every SPU ratepayer a flat hydrant fee amounted to an improper tax; (3) the ratepayers may recover past improper hydrant fees, together with interest at the judgment rate; (4) Seattle's new tax on SPU is legal; and (5) Lake Forest Park must pay for the hydrants within its boundary.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST and STEPHENS, JJ.
NOTES
[1] This rule is in flux. Compare Branson v. Port of Seattle, 152 Wash.2d 862, 879-80 & n. 10, 101 P.3d 67 (2004) (Chambers, J., concurring) (a case may be heard even if a party lacks standing, as long as the issue is one of great public interest and well briefed), with High Tide, 106 Wash.2d at 702, 725 P.2d 411 (unanimously holding, "[i]f a plaintiff lacks standing to bring a suit, courts lack jurisdiction to consider it."). This case does not lend itself to deciding whether standing is jurisdictional in Washington, since neither party briefed the matter. And in any event, even if we are not required to raise the issue, we certainly have the discretion to. In re Recall of West, 156 Wash.2d 244, 248, 126 P.3d 798 (2006).
[2] Otherwise, resident taxpayers of the providing city would be paying for services to others.