[No. 84824-6.   En Banc.]
Argued October 20, 2011.     Decided January 26, 2012.

THE CITY OF TACOMA, *Appellant*, v. THE CITY OF BONNEY LAKE, *Defendant*, THE CITY OF FIRCREST ET AL., *Respondents*.

*Elizabeth A. Pauli, Tacoma City Attorney,* and *William C. Fosbre, Assistant,* and *Michael B. King* (of *Carney Badley Spellman PS*), for appellant.

*Michael B. Smith, Fircrest City Attorney; Janean Parker; Wayne D. Tanaka* (of *Ogden Murphy Wallace PLLC*); *Patricia A. Richardson, Federal Way City Attorney,* and *Peter B. Beckwith, Assistant; Kathleen J. Haggard* (of *Dionne & Rorick LLP*); and *Mark E. Lindquist, Pierce County Prosecuting Attorney,* and *David B. St Pierre, Deputy,* for respondents.

*Adam W. Gravley* and *Tadas A. Kisielius* on behalf of Washington Water Utilities Council, amicus curiae.

¶1 Owens, J. — The city of Tacoma has franchise agreements with Pierce County and the cities of Fircrest, University Place, and Federal Way (collectively Municipalities) to provide them with water services.[1] The central issue before us is whether the franchise agreements require Tacoma to not only provide and maintain fire hydrants, but to bear the costs as well. As part of that issue, Tacoma also raises questions about the impact of the agreements' indemnification clauses on this case, as well as whether Tacoma must defend Federal Way in this action. We hold that the franchise agreements contractually require Tacoma to provide hydrants to the Municipalities and that the indemnification provisions do not preclude this lawsuit or require Tacoma to defend Federal Way.

## FACTS AND PROCEDURAL HISTORY

¶2 Tacoma entered into franchise agreements with the Municipalities agreeing to provide them with a water system. In consideration, Tacoma received access to the rights of way in the Municipalities' jurisdictions and it enjoyed the economies of scale that accompanied the larger ratepayer base. The franchise agreements also allowed Tacoma to make long term planning decisions in those areas. Since the inception of these agreements, Tacoma Public Utility (TPU), which is wholly controlled by Tacoma, paid for the hydrants in its and the Municipalities' jurisdictions by charging ratepayers a hydrant fee.[2] Tacoma then changed its billing practice after we decided *Lane v. City of Seattle*, 164 Wn.2d 875, 194 P.3d 977 (2008).

¶3 In *Lane*, we decided that Seattle Public Utility (SPU) could not charge its ratepayers a hydrant fee; payment for the hydrants would have to come from the city of Seattle's

---

[1] The city of Bonney Lake and King County settled with Tacoma and are no longer parties to this lawsuit. Clerk's Papers at 95-96, 520-21.

[2] To avoid confusion, TPU and Tacoma will hereafter be referred to simply as "Tacoma."

general fund if it wished to pay for them at all. *Id*. at 891. Further, we held that Lake Forest Park, which was receiving hydrant services from SPU, must pay for hydrants within its jurisdiction. *Id*.

¶4 Seeing the similarity between SPU's service to Lake Forest Park and Tacoma's service to the Municipalities, Tacoma ceased charging ratepayers for hydrants and subsequently sent a bill to the Municipalities for those costs. The Municipalities refused to pay. Tacoma then filed a declaratory judgment action to determine whether the Municipalities or Tacoma was responsible for the hydrant costs.

¶5 Several months later, the parties filed cross motions for summary judgment. The trial judge granted the Municipalities' motion and denied Tacoma's. Tacoma then filed a motion for reconsideration and the trial judge found that (1) the franchise agreements were "valid binding contracts," (2) the indemnification provisions precluded Tacoma from pursuing this action, and (3) Tacoma must defend Federal Way pursuant the indemnification provision unique to the agreement with Federal Way. Clerk's Papers (CP) at 730-31. Tacoma challenges each of these rulings and the trial judge's failure to enter findings as to all questions posed by Tacoma in the declaratory judgment action. We granted direct review.

## ISSUES

¶6 1. Do the franchise agreements require Tacoma to provide and maintain hydrants for the Municipalities?

¶7 2. Do the indemnification and hold harmless provisions preclude this action? Additionally, must Tacoma defend Federal Way in this action?

¶8 3. Was the Uniform Declaratory Judgments Act, chapter 7.24 RCW, satisfied?

¶9 4. Is Tacoma entitled to attorney fees?

## ANALYSIS

¶10 We begin our analysis with the franchise agreements and whether they require Tacoma to provide and maintain hydrants. Related to that question, but distinct, is whether the indemnification and hold harmless provisions preclude this lawsuit. After addressing these questions, we decide what impact, if any, *Lane* has on this case. Finally, we address Tacoma's claim that the trial court failed to satisfy the Uniform Declaratory Judgments Act when it granted summary judgment.

### I. The Franchise Agreements Contractually Require Tacoma To Provide Hydrant Services

¶11 Whether the franchise agreements require Tacoma to provide hydrants is a question of contractual interpretation. As part of this analysis, we must decide whether Tacoma was acting in a governmental or proprietary manner when it entered the franchise agreements. This determines the proper level of deference we must accord its actions in contracting with the Municipalities. Then we must determine if the franchise agreements require Tacoma to provide and maintain the hydrants. Finally, we address if requiring Tacoma to bear the costs of the hydrants violates RCW 43.09.210, the local government accounting statute.

#### a. *Operating a Public Utility and Entering Franchise Agreements Are Proprietary Functions*

¶12 A city's decision to operate a utility is a proprietary decision, as is its right to contract for any lawful condition. *Burns v. City of Seattle*, 161 Wn.2d 129, 143-45, 154-55, 164 P.3d 475 (2007). In contrast, a city's decision to *grant* a franchise is governmental. *Id.* at 154. Applying those rules here, Tacoma's decision to operate TPU and enter the franchise agreements with the Municipalities was

proprietary; the Municipalities' decision to grant the franchises was governmental.

¶13 As Tacoma was acting in a proprietary capacity, we examine the franchise agreements like any other contract for two main reasons. First, when a city takes proprietary action, its business powers are viewed almost the same as a private individual's. *City of Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 694, 743 P.2d 793 (1987). In simpler terms, we employ the same tools of contractual interpretation that we would for contracts involving private parties. Second, franchise agreements are treated like contracts because they are simply contracts between a municipality and another party. *See Burns*, 161 Wn.2d at 142-44. The franchise agreement grants a valuable property right to the grantee to use the public streets. *Id.* at 143-44. Accordingly, we must next determine if the franchise agreements contractually require Tacoma to provide and maintain hydrants and to bear the costs.

### b. *Tacoma Is Required To Provide Hydrants under the Franchise Agreements*

¶14 When interpreting a contract, we give ordinary meaning to the words in the contract and try to give effect to the parties' mutual intent. *Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982). Additionally, we may look to the course of dealings in defining a contract's terms. *Puget Sound Fin., LLC v. Unisearch, Inc.*, 146 Wn.2d 428, 434, 47 P.3d 940 (2002). Course of dealings is " 'a sequence of previous conduct between the parties to an agreement which . . . establish[es] a common basis of understanding for interpreting their [agreement].' " *Id.* at 436 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 223(1) (1981)). The course of dealings evidence here is the most helpful in determining if the franchise agreements require Tacoma to provide and maintain hydrants.

¶15 Course of dealings evidence is the most helpful because the franchise agreements do not expressly provide

for hydrants but instead provide more generally for a "water system."[3] *See, e.g.*, CP at 191 (Fircrest) ("construct, operate, maintain, replace, and use all necessary equipment and facilities for a water system"); *cf.* CP at 225 (Federal Way) (concerning "water pipes, and mains and appurtenances and accessories for the transmission and distribution of water"). Tacoma asserts that hydrants cannot be included because they are not explicitly mentioned. However, Tacoma's position ignores the course of dealings between the parties along with the most likely meaning of the term "water system."

¶16 The course of dealings between Tacoma and the Municipalities proves that Tacoma agreed to provide and maintain hydrants under the franchise agreements. Before *Lane*, Tacoma included hydrant service as part of its general duties and recouped the cost via its rates. This course of dealings continued for years. In fact, it was not until after *Lane* that Tacoma began charging the Municipalities for hydrants and claiming that hydrants were never a part of the franchise agreements.

¶17 Moreover, the term "water system," as understood by a public utility, likely includes hydrants. The statutory definition of " '[w]ater system' " for public utilities includes fixtures and appliances. RCW 80.04.010. A hydrant is most likely a fixture or appliance that is used to supply water. It is undisputed that the Municipalities must have hydrants in their jurisdictions and that water must flow to those hydrants to make them useful. Therefore, any discussion of a "water system" by a public utility most likely includes hydrants by default.

¶18 Given that a public utility, like Tacoma, likely understood a "water system" to include hydrants, and the persuasive course of dealings evidence, we conclude that

---

[3] The franchise agreement with Federal Way does mention hydrants in a later section, but it does not aid in answering this question. *See* CP at 328 ("[i]f it is necessary to shut down or diminish the water pressure so that fire hydrants may be affected, the Franchisee shall notify the appropriate fire district by telephone").

the parties intended hydrants to be a part of the franchise agreements. Any other conclusion would ignore the years of prior conduct. Therefore, the franchise agreements require Tacoma to provide and maintain hydrants and to bear the costs.

### c. *RCW 43.09.210—the State Accountancy Statute*

¶19 Next, we must determine if requiring Tacoma to provide and maintain hydrants violates RCW 43.09.210, the local government accounting statute. RCW 43.09.210 requires a government entity to pay for any services it receives from another government entity at their "true and full value." *Cf. State v. Grays Harbor County*, 98 Wn.2d 606, 610, 656 P.2d 1084 (1983) (holding RCW 43.09.210 applies to state and local government activities). The phrase "true and full value" is "applied flexibly and practically." 1997 Op. Att'y Gen. No. 5, at 3, 1997 Wash. AG LEXIS 29, at *7.

¶20 We applied RCW 43.09.210 in *Lane* and required Lake Forest Park to pay for hydrant services provided by SPU. 164 Wn.2d at 889. SPU provided the services pursuant to an ordinance passed by Lake Forest Park, not pursuant to a franchise agreement. *See id.* A franchise agreement changes the analysis because it is a "valuable property right" "allow[ing] particular individuals to profit from the use of the city streets in a manner not generally available to the public." *Burns*, 161 Wn.2d at 143-44.

¶21 That being so, the Municipalities traded franchise rights to Tacoma in return for a water system. In light of the flexible definition of "true and full value," this is enough to satisfy RCW 43.09.210. The franchise agreements give Tacoma the ability to plan for the long term and the right to use the public ways. In return, the Municipalities receive the benefit of a water system for their citizens. Tacoma may dispute the value of the franchise agreements, but giving precise values to the benefit each party received under the franchise agreements is impracticable.

¶22 Combining the security granted by the franchise agreements with the flexible definition of "true and full

value," we find that RCW 43.09.210 is satisfied. Had Tacoma wished to exclude hydrants from the franchise agreements, it could have done so when it negotiated the agreements. It cannot now ask this court to amend the contract because it is unhappy with the bargain it struck.

## II. The Indemnification Provisions Do Not Apply

¶23 Having determined the scope of the franchise agreements to include hydrants, we now determine whether the indemnification provisions cover the cost of hydrants and whether Tacoma had a duty to defend Federal Way.

¶24 The trial court found that the indemnification and hold harmless provisions preclude this suit and require Tacoma to bear all hydrant costs. The Municipalities contend that the broad language of the provisions supports this ruling. For example, the franchise agreement with University Place states, "[Tacoma] hereby releases, covenants not to bring suit and agrees to indemnify, defend and hold harmless the City . . . from any and all claims, costs, judgments, awards or liability to any person." CP at 358.

¶25 While this language is undeniably broad, it does not prevent Tacoma, a party to the contract, from suing the Municipalities, another party to the contract. Concluding otherwise would produce the absurd result of precluding a party to a contract from disputing its obligations under that contract. *Cf. Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 341, 738 P.2d 251 (1987) (contract interpretation should not produce an absurd result). This gives rise to a broad policy concern that the amicus raises: under the Municipalities' interpretation, an indemnified party could completely avoid its contractual obligations by claiming any enforcement action to compel performance is a "claim" arising under the contract.[4] Thus, the trial court erred.

---

[4] Moreover, the Municipalities are wrong in claiming that the "release" and "covenant not to sue" language from two of the franchise agreements precludes

¶26 Despite this error, Tacoma is still responsible for the hydrant costs. As we held in the first section of our opinion, we find that Tacoma is contractually required to bear the cost of the hydrants even absent the indemnification provisions. Consequently, we can reverse the trial court's ruling as to the indemnification provisions while affirming its result.

¶27 Similarly, we reverse the trial court's ruling that Tacoma must defend Federal Way in this action. Granted, Tacoma did agree to "indemnify and hold harmless and defend [Federal Way] from any and all claims, demands, losses, actions and liabilities (including costs and all attorney fees) to or by any and all persons." CP at 333. But this interpretation produces an absurd result like the Municipalities' proposed interpretation of the indemnification provisions did: Tacoma would be forced to bear all costs for litigation when any dispute over contractual performance between parties arises. That result simply cannot be obtained from reading the provision as it currently exists.

### III. *Lane* Does Not Apply

¶28 Tacoma next asks us to issue a blanket ruling that any charge for hydrants results in a tax, but the issue cannot be decided at this time. Determining whether a charge is a tax or a fee is a nuanced analysis that depends on how the charge is levied. *See Covell v. City of Seattle*, 127 Wn.2d 874, 879, 905 P.2d 324 (1995). For example, in *Lane*, while we held that hydrant charges to ratepayers resulted in a tax, we also held that SPU's charge to Lake Forest Park for hydrants was a fee and not a tax. 164 Wn.2d at 884, 890. This dichotomy illustrates that whether a charge for hydrants is a tax or a fee depends on how it is levied.

¶29 Currently, Tacoma is not charging any ratepayers for hydrants, and it does not have a specific charging

---

this action. These provisions only preclude claims based on the "acts or omissions of [Tacoma]." CP at 358, 375. The Municipalities have failed to demonstrate how the hydrant costs, or the applicability of *Lane*, are an act or omission contemplated by these provisions.

scheme in place. Tacoma has broad discretion in setting its rates, *see* RCW 35.92.200, which means the charge can take many forms. Accordingly, we cannot determine whether an undefined charge is either a tax or a fee under *Covell*. Any ruling otherwise would be purely hypothetical. For that reason we do not, at this time, address whether Tacoma can charge ratepayers for hydrants.

IV. The Uniform Declaratory Judgments Act

¶30 Tacoma also contends the trial court erred in granting summary judgment without addressing all the issues before it. Tacoma relies on *Greyhound Corp. v. Division 1384 of Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America*, 44 Wn.2d 808, 271 P.2d 689 (1954), to claim that the trial court should have determined who is responsible for the ongoing costs and maintenance of the hydrants.

¶31 *Greyhound* does not support Tacoma's position. Instead, *Greyhound* merely prevents a court from dismissing a complaint with prejudice without declaring the rights of the parties first. *Id.* at 822-23. Here, the trial judge followed that requirement. He dismissed Tacoma's case not on a technicality, but on the merits by making several findings of fact that were dispositive on the issues presented. Thus, the trial court's decision to not address every issue was proper.

V. Attorney Fees

¶32 Neither Federal Way nor Tacoma is entitled to any attorney fees related to the duty to defend claim. Above, we stated that Tacoma does not have a duty to defend Federal Way; therefore, we must reverse any attorney fees related to that claim that were awarded to Federal Way. Tacoma now seeks attorney fees under that very same duty to defend provision despite its previous arguments that the provision does not apply here. Accordingly, Tacoma's incongruous request for attorney fees must be denied because the duty to defend provision is inapplicable.

## CONCLUSION

¶33 We hold that the franchise agreements contractually require Tacoma to provide and maintain the hydrants in the Municipalities' jurisdictions and to bear the cost. While we are affirming the trial court on most issues, we do so on other grounds because the indemnification provisions do not preclude this action. We further hold that Tacoma does not have a duty to defend Federal Way, and we reverse any attorney fees previously awarded to Federal Way based on this claim. Additionally, the trial judge satisfied the Uniform Declaratory Judgments Act by deciding the case on the merits. Finally, Tacoma is not entitled to attorney fees because Tacoma cannot point to any provision in the franchise agreement authorizing such an award. In sum, we affirm the result the trial court reached, except with regard to the duty to defend, which we reverse.

MADSEN, C.J.; C. JOHNSON, CHAMBERS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ.; and ALEXANDER, J. PRO TEM., concur.