FILED
COURT OF APPEALS
DIVISION II

2015 JUL 21 AM 9: 26

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CH2O, INC., a Washington Corporation,<br><br>Appellant,<br><br>v.<br><br>MERAS ENGINEERING, INC.,<br><br>Respondent,<br><br>and<br><br>JAMES SHAW, individually and the marital community comprised of JAMES SHAW and JENNIFER SHAW,<br><br>Third Party Defendants. | No. 45728-8-II<br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — CH2O, Inc. appeals the superior court's summary judgment order that CH2O cannot recover economic damages against Meras Engineering, Inc. under Section 9 of the parties' 2007 Distributor Agreement (Agreement). CH2O argues that the trial court erred in interpreting Section 9 of the Agreement to prohibit both parties from recovering economic damages against one another, but not as to claims brought by third parties. We hold that, under Section 9 of the Agreement, the parties expressly waived the right to seek economic damages from one another for breach of the Agreement. Accordingly, we hold that CH2O cannot recover economic damages against Meras for breach of the Agreement, but CH2O may pursue other forms of noneconomic recovery against Meras. We affirm the superior court's final order granting summary judgment in

favor of Meras and denying partial summary judgment to CH₂O. We also award Meras, as the prevailing party, its reasonable attorney fees and costs on appeal.

## FACTS

CH₂O, a Washington corporation, and Meras, a California corporation, entered into an Agreement in 2007. Both companies provide chemical water treatment products and services to commercial customers in the United States and abroad. The parties negotiated and drafted the Agreement together.

At the time that the parties entered into the Agreement, CH₂O had an existing customer base in California where it sold its products. Under the Agreement, CH₂O appointed Meras as a nonexclusive distributor for the sale of particular products to specific customers. The customers and products were identified in Addendums A and B to the Agreement, respectively.

Section 6(a) of the Agreement provided that Meras was to "use its best efforts to develop and maintain the market for the Products in [California]." Clerk's Papers (CP) at 10. To this end, CH₂O sold products to Meras for resale to its existing customers. The Agreement also contained noncompete provisions prohibiting Meras from selling or distributing any products of CH₂O's potential competitors that were the same or similar to CH₂O's products. The Agreement was to continue for an initial period of three years and then automatically renew annually unless the parties expressly terminated it.

On August 10, 2011, two of Meras's principals learned for the first time of the existence of the 2007 Agreement when Meras's former attorney forwarded to them a letter from CH₂O's attorney, attaching the Agreement. Meras promptly exercised its termination rights under Section 14 of the Agreement by giving written notice to CH₂O of its intent to terminate the Agreement

2

within 90 days. On September 30, 2011, CH$_2$O received written notice from Meras's attorney terminating the Agreement. Consequently, the Agreement was terminated on December 31. CH$_2$O subsequently learned that, during the term of the Agreement, Meras sold products similar to CH$_2$O's products to CH$_2$O's customers. CH$_2$O contends that this conduct violated the noncompete provisions of Section 15 of the Agreement, as well as the "best efforts" provision of Section 6(a) of the Agreement. CP at 10. CH$_2$O also alleged that Meras failed to comply with the portion of Section 6(a) of the Agreement that requires Meras to "refer to CH$_2$O inquiries and requests for [CH$_2$O's] Products from potential customers outside the [California area]." CP at 10.

In January 2012, CH$_2$O filed a lawsuit seeking economic damages for Meras's alleged breach of the Agreement. With its answer to the lawsuit, Meras filed a third party complaint against its former principal, James Shaw, alleging claims arising from his negotiation and execution of the Agreement and his failure to disclose the Agreement to Meras's executive team upon his separation from the company. Following mandatory alternative dispute resolution, Meras dismissed its claims against Mr. Shaw with prejudice.

In October and November 2012, CH$_2$O and Meras filed cross-motions for partial summary judgment regarding the interpretation of Section 9 of the 2007 Agreement. The superior court granted Meras's motion for partial summary judgment and denied CH$_2$O's motion. The superior court held that CH$_2$O "may not seek economic damages against [Meras] for breach of the subject Distributor Agreement." CP at 186. On January 31, 2014, the superior court entered a final order and judgment dismissing all claims in favor of Meras and against CH$_2$O, because its summary judgment ruling disposed of all triable issues in this matter. CH$_2$O appealed.

No. 45728-8-II

## ANALYSIS

### I. STANDARD OF REVIEW

We review a summary judgment order de novo, engaging in the same inquiry as the trial court. *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wn.2d 84, 90, 312 P.3d 620 (2013). Summary judgment is appropriate only if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Donatelli*, 179 Wn.2d at 90; CR 56(c). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

"When reviewing a decision on a motion for summary judgment, '[a] question of contract interpretation may be determined as a matter of law if it does not turn on the credibility of extrinsic evidence or . . . a choice among reasonable inferences to be drawn from extrinsic evidence.'" *Donatelli*, 179 Wn.2d at 107 (quoting *Kofmehl v. Baseline Lake, LLC*, 177 Wn.2d 584, 594, 305 P.3d 230 (2013)) (alteration in original). Contract interpretation is a question of law when "'(1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence.'" *United Fin. Cas. Co. v. Coleman*, 173 Wn. App. 463, 472, 295 P.3d 763 (2012) (quoting *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996)).

When interpreting a contract, we give ordinary meaning to the words in the contract and try to effect the parties' mutual intent. *City of Tacoma v. City of Bonney Lake*, 173 Wn.2d 584, 590, 269 P.3d 1017 (2012); *see Realm, Inc. v. City of Olympia*, 168 Wn. App. 1, 4, 277 P.3d 679

4

(2012). "Washington courts follow the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words used." *Realm*, 168 Wn. App. at 5.

"To interpret a contract, we must determine the parties' intent, for which we apply the 'context rule.'"[1] *Fedway Marketplace West, LLC v. State*, 183 Wn. App. 860, 871, 336 P.3d 615 (2014) (quoting *Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn. App. 263, 274, 279 P.3d 943 (2012)). The purpose of the context rule is to determine the parties' "meeting of the minds, as opposed to [their] insufficient written expression of . . . intent." *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 895, 28 P.3d 823 (2001). The context rule allows a court, when "'viewing the contract as a whole, to consider extrinsic evidence, such as the circumstances leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective interpretations.'" *Fedway Marketplace West*, 183 Wn. App. at 871 (quoting *Roats*, 169 Wn. App. at 274). "This rule applies 'even when the disputed provision is unambiguous.'" 183 Wn. App. at 871 (quoting *Roats*, 169 Wn. App. at 274).

"But our consideration of 'surrounding circumstances and other extrinsic evidence' is limited 'to determin[ing] the meaning of *specific words and terms used*' and not to 'show an

---

[1] The Washington Supreme Court first adopted the "'context rule'" in *Berg v. Hudesman*:
> [The *Berg* Court] recognized that intent of the contracting parties cannot be interpreted without examining the context surrounding an instrument's execution. If relevant for determining mutual intent, extrinsic evidence may include (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties.

*Fedway Marketplace West, LLC v. State*, 183 Wn. App. 860, 871 n.14, 336 P.3d 615 (2014) (quoting *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 502, 115 P.3d 262 (2005)).

intention independent of the instrument' or to 'vary, contradict or modify the written word.'"

*Fedway Marketplace West*, 183 Wn. App. at 871 (quoting *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005) (emphasis in original)).

## II. SECTION 9

The disputed provision, Section 9 of the Agreement, provides as follows:

> 9. Limitation of Liability. Neither party shall be liable to the other for incidental, special, consequential or punitive damages, including but not limited to loss of profits, use of capital, or business opportunity, downtime costs or claims of customers of said party arising out of the performance, non-performance or termination of this Agreement, whether based upon strict liability, active or passive negligence, contract, breach of warranty or any other legal theory.

CP at 11.

$CH_2O$ argues that reading Section 9 to prohibit recovery of economic damages for breach of the Agreement is not a reasonable interpretation, and renders the contract obligations illusory, because it would prohibit either party from recovering any sort of economic damages against the other for any type of claim. $CH_2O$ argues that this court should interpret Section 9 to limit the parties' liability to one another only for third party indemnification claims, such as those brought by "customers" as referenced in Section 9. CP at 11.

Meras argues that Section 9 is an express and unambiguous waiver of the parties' liability to one another for economic damages, precluding economic recovery. Meras also claims that the term "claims of customers" is only one type of claim listed in Section 9, and thus the section is not limited to only third party claims. CP at 11.

We agree with Meras; read as a whole, Section 9 applies not just to damages for "claims of customers," but also to damages for "loss of profits, use of capital, or business opportunity, [or]

downtime costs." CP at 11. The plain language of Section 9 says, "Neither party shall be liable to the other for incidental, special, consequential, or punitive damages." CP at 11. Accordingly, neither party may recover economic damages against the other for breach of the Agreement.

CH2O argues that, under *City of Tacoma v. Bonney Lake*, we should not interpret the broad limitation of liability in Section 9 to preclude recovery of economic damages, because limiting liability in this manner would prevent CH2O from obtaining a viable remedy for breach. But we reject this argument because Section 9 still permits CH2O to pursue other recovery in the form of noneconomic damages.

*City of Tacoma* involved Tacoma's water service agreements with municipalities and a broad indemnity provision that stated, "[Tacoma] hereby releases, covenants not to bring suit and agrees to indemnify, defend and hold harmless the City . . . from any and all claims, costs, judgments, awards or liability to any person." *City of Tacoma*, 173 Wn.2d at 593 (alteration in original). The municipalities argued that, because any enforcement action to compel performance would be a "claim" arising under the contract, the indemnity provision completely precluded the City of Tacoma from filing an action under the contract. *City of Tacoma*, 173 Wn.2d at 593. The Supreme Court rejected this argument, holding that interpreting such a blanket limitation of liability into the contract would create an absurd result by allowing the indemnified party to "completely avoid its contractual obligations by claiming any enforcement action to compel performance is a 'claim' arising under the contract." 173 Wn.2d at 593.

But here the language in Section 9 is narrower than the broad indemnity provision in *City of Tacoma*; here, Section 9 allows either party to sue the other party for breach, but it precludes economic recovery. This is not the absurd result that CH2O claims; long-term business partners

7

may choose to preclude recovery of economic damages because they depend on each other's financial stability to execute a successful business strategy. The Agreement still permits either party to dispute its obligations under the contract, to bring a suit against the other party, or to obtain noneconomic recovery, such as specific performance or a declaratory judgment.

## A. Section 18

CH$_2$O then argues that Section 18 of the Agreement would be meaningless if the court were to interpret Section 9 to waive liability for economic damages. Section 18 provides for the recovery of costs and attorney fees by the prevailing party in a dispute regarding the Agreement.[2] CH$_2$O argues that Section 18's provision permitting recovery of costs and attorney fees would be illusory if Section 9 is interpreted as a waiver of economic damages.

We agree with Meras that Section 9 of the Agreement, read as a whole, applies not just to damages for "claims of customers," but also to damages for "loss of profits, use of capital, or business opportunity, downtime costs or claims of customers." CP at 11. But "a reasonable, fair, just, and effective meaning to all manifestations of intention," expressed in Section 18 compels us to hold that this provision carves out a guarantee of attorney fees and costs for claims not waived by Section 9. *Spokane Sch. Dist. No. 81 v. Spokane Educ. Ass'n*, 182 Wn. App. 291, 305, 331 P.3d 60 (2014). Moreover, Section 9 does not bar other recovery in the form of noneconomic damages. And Section 18, accordingly, allows recovery of fees and costs to a prevailing party in

---

[2] Section 18 of the Agreement between the parties provides, in relevant part, "In the event of a dispute over any part of this Agreement, the parties agree that . . . the prevailing party shall be entitled to recover from the losing party any costs, disbursements and reasonable attorney fees incurred in such dispute." CP at 13.

an action seeking declaratory judgment or other equitable relief. This interpretation harmonizes Sections 9 and 18.

## B. Section 13

CH$_2$O next argues that Section 13, the Force Majeure provision, would be "superfluous" if we interpret Section 9 to waive economic damages. Br. of Appellant at 12. Section 13 disclaims the parties' liability to one another in situations beyond the parties' control. But just as the parties agreed to waive liability to one another for economic damages resulting from performance of the Agreement, it is reasonable for them to also specifically agree to waive liability in the event that forces beyond the parties' control make performance impossible.

Although the broad limitation of liability may significantly limit CH$_2$O's remaining recovery since the parties already terminated the Agreement, this does not render this interpretation of Section 9 absurd, as CH$_2$O argues. Both parties drafted and negotiated the Agreement and both parties are sophisticated; we conclude that the parties understood their contracting terms, and implicitly accepted the potential consequence that recovery may be limited or even effectively foreclosed if a party did not timely purse its right to enforce the contract.

## III. EXTRINSIC EVIDENCE

The superior court considered extrinsic evidence in its summary judgment ruling. CH$_2$O submitted declarations from Tony McNamara, President of CH$_2$O, and James Shaw, a representative of Meras, both of whom were involved in the Agreement negotiations. Their declarations stated that the parties worked together in creating the Agreement and that they understood the Agreement to permit economic damages for breach. CH$_2$O argues that, although the superior court properly admitted the extrinsic evidence as an aid in ascertaining the parties'

intent, the court erred in failing to find that this evidence supported CH$_2$O's interpretation of Section 9 of the Agreement.[3] CH$_2$O contends that these declarations demonstrated that the parties never intended Section 9 to preclude economic damages. We disagree.

We do "not consider [extrinsic] evidence to 'show an intention independent of the instrument' or to 'vary, contradict or modify the written word.'" *Hulbert v. Port of Everett,* 159 Wn. App. 389, 402, 245 P.3d 779 (2011) (quoting *Hearst Commc'ns,* 154 Wn.2d at 503). Because these declarations would contradict the clear terms of Section 9, which precludes the parties from recovering economic damages for breach, we do not consider these declarations.

### IV. AMBIGUITY

CH$_2$O argues that it was not the sole drafter of the Agreement and Meras is not entitled to have the contract read in the light most favorable to it. CH$_2$O further argues that the contract should not be construed against it unless the parties' intent cannot otherwise be determined.

"If a contract provision's meaning is uncertain or is subject to two or more reasonable interpretations after analyzing the language and considering extrinsic evidence (if appropriate), the provision is ambiguous." *Viking Bank v. Firgrove Commons 3, LLC,* 183 Wn. App. 706, 713, 334 P.3d 116 (2014). "We generally construe ambiguities against the contract's drafter." *Viking Bank,* 183 Wn. App. at 713. But "if the parties drafted the contract together, we will adopt the interpretation that is the most reasonable and just." 183 Wn. App. at 713.

---

[3] Meras challenged the admission of extrinsic evidence at trial, but it did not appeal the trial court's ruling. The trial court considered Mr. McNamara's declaration in its order granting Meras's summary judgment motion, and expressly ruled that it did not consider Meras's motion to strike portions of the declaration.

Declarations submitted by both CH₂O and Meras showed that both parties engaged in drafting and negotiating the Agreement. Unlike an adhesion contract, the Agreement was freely negotiated between the parties. Because we find that the terms of Section 9 clearly express the parties' intent at the time of drafting, we decline to consider extrinsic evidence.

V. ATTORNEY FEES AND COSTS

Meras requests reasonable attorney fees and costs on appeal. RAP 18.1(a) and (b) permit a requesting party the right to recover reasonable attorney fees or expenses on appeal if applicable law grants the party that right. Under RCW 4.84.330, the prevailing party in an action to enforce or defend a contract is entitled to attorney fees and costs on appeal where the contract so provides.[4] Section 18 of the Agreement between the parties provides, in relevant part: "In the event of a dispute over any part of this Agreement, the parties agree that . . . the prevailing party shall be entitled to recover from the losing party any costs, disbursements and reasonable attorney fees incurred in such dispute." CP at 13. Because under RCW 4.84.330 and Section 18 of the Agreement, the prevailing party is entitled to an award of reasonable attorney fees and costs on appeal in a contract dispute action, we award Meras, as the prevailing party, reasonable attorney fees and costs on appeal.

---

[4] RCW 4.84.330 provides,

In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

11

No. 45728-8-II

CONCLUSION

We hold that, under Section 9 of the Agreement, the parties expressly waived the right to seek economic damages from one another arising for breach of the Agreement. Thus CH2O cannot seek economic damages against Meras for breach of the Agreement, but CH2O may pursue other recovery in the form of noneconomic damages. We affirm the superior court's final order granting summary judgment in favor of Meras and denying partial summary judgment to CH2O. We also award Meras, as the prevailing party, reasonable attorney fees and costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, C.J.

BJORGEN, A.C.J.

12