FILED
COURT OF APPEALS
DIVISION II

2014 SEP 30 AM 9: 06

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FEDWAY MARKETPLACE WEST, LLC, a Washington limited liability company, and GARLAND & MARKET INVESTORS, LLC, a Washington limited liability company, on behalf of themselves and all others similarly situated, <br><br> Appellant, <br><br> v. <br><br> STATE OF WASHINGTON, <br><br> Respondent. | No. 44509-3-II <br><br><br><br><br><br><br> PUBLISHED OPINION |

HUNT, J. — Fedway Marketplace West, LLC, and Garland & Market Investors, LLC, landlords of former state liquor store locations (Landlords), appeal the superior court's entry of a CR 12(c) judgment on the pleadings and dismissal of Landlords' complaints against the State of Washington for terminating its leases of Landlords' properties the State had used for selling liquor. After Initiative 1183 (I-1183) privatized the sale of liquor in Washington, the State's Liquor Control Board terminated its leases with the landlords of state-owned liquor store locations and auctioned the right to sell liquor at these locations to private retailers. Landlords argue that (1) the State deliberately misinterpreted I-1183, wrongfully terminated their leases, and illegally gave auction buyers the right to sell liquor within a one-mile radius of the Landlords' locations; (2) the superior court erred in striking Landlords' extrinsic evidence that the State acted in bad faith in deliberately misinterpreting I-1183 and terminating their leases; (3) the State breached the duty of

good faith and fair dealing in terminating their leases; and (4) the State's termination of their leases violated the contract clauses[1] and takings clauses[2] of the federal and state constitutions.

The State responds that (1) its decision to permit auction buyers to sell liquor within a one-mile radius was irrelevant to the lease terminations, which I-1183 required; (2) Landlords failed to state a claim for a breach of the duty of good faith and fair dealing; (3) Landlords' extrinsic evidence was not admissible to interpret an unambiguous contract; and (4) the superior court properly dismissed Landlords' constitutional claims because, once the leases terminated, there could be no contract and no taking. We hold that, because I-1183 triggered the termination provision in the State's leases with Landlords, Landlords cannot state a claim against the State under their former leases. We affirm the superior court's dismissal of Landlords' complaints.

FACTS

I. LEASES

Fedway Marketplace West, LLC and Garland & Market Investors, LLC are former lessors of State liquor store locations. In 2007, Garland leased its Spokane premises to the State; in 2010, Fedway leased its Federal Way premises to the State. Each lease was for a 10-year term. Both leases included a termination clause ("Paragraph 3"), which provided that if a newly enacted law prevented either party from complying with the lease,[3] then the lease would terminate and both

---

[1] WASH. CONST. art. I, § 23; and U.S. CONST. art I, § 10.

[2] WASH. CONST. art. I, § 16; and U.S. CONST. amend. V.

[3] Both leases included a "use" provision that stated: "The premises shall be occupied by the Washington State Liquor Control Board and *used solely for the purposes of selling alcoholic beverages and lottery products.* The Board shall and may peaceably and quietly have, hold and enjoy the premises for these purposes." CP at 21-22, 32 (emphasis added).

parties would be released from all liability. As the leases required, Landlords made improvements according to the Liquor Control Board's specifications, and the State paid Landlords rent for using the premises to sell liquor.

On November 8, 2011, Washington voters approved Initiative 1183, which privatized the State-controlled system of liquor distribution and sale, effective December 8, 2011. I-1183, now codified as RCW 66.24.620[4], also directed the Liquor Control Board to cease all liquor sales no later than June 1, 2012, and to auction "the right at each state-owned store location of a spirits[5] retail licensee to operate a liquor store upon the premises." RCW 66.24.620(4)(c).

To implement I-1183, the State auctioned the rights to sell liquor at its 167 state-run liquor store locations. Each of the 128 successful bidders received the exclusive right to apply for a license to sell liquor at the store on which the bid had been placed. The State advised each bid winner (1) to secure a lease with the store's landlord; and (2) if unable to secure such a lease, to consider (a) re-selling the right to sell liquor at that location or (b) requesting "an alternative location within a one-mile radius of the existing location." Clerk's Papers (CP) at 8. Before terminating its leases, the State sent its liquor store lessors, including Landlords, letters notifying them of the upcoming lease terminations. The State terminated its Fedway lease effective May

---

[4] LAWS OF 2012, ch. 2, § 102.

[5] "'Spirits' means any beverage which contains alcohol obtained by distillation, except flavored malt beverages, but including wines exceeding twenty-four percent of alcohol by volume." RCW 66.04.010(41).

31, 2012, and its Garland lease effective July 31, 2012.[6]

## II. PROCEDURE

Landlords brought a class action against the State, alleging that it had (1) anticipatorily repudiated and breached their liquor store lease contracts; (2) violated an implied covenant of good faith and fair dealing; (3) violated the state and federal contract clauses[7] by engaging in legislative action that impaired the State's contractual obligations; and (4) violated the state and federal takings clauses[8] by taking private property for public use without just compensation. The State moved for judgment on the pleadings under CR 12(c).

Landlords opposed the State's motion with extensive exhibits purporting to show that (1) the State knew its decision—to permit bid winners to sell liquor in alternative locations within a one-mile radius of the existing location—could violate I-1183 and would significantly erode Landlords' leverage in renegotiating lease agreements with bid winners; (2) the State did not require bid winners to accept assignment of the State's existing leases; (3) in February 2012, the State made a commitment to pay for unamortized improvements that Landlords had made to meet the Liquor Control Board's specifications; and (4) the State Department of Revenue failed to perform its duty under RCW 66.24.620 to develop rules and procedures "'to address claims that

---

[6] After the State terminated its lease, Fedway entered into a 12-month lease with the bid winner for its Federal Way location at a rent that was $3,832 less per month than the State had been paying. Two months later, Fedway's new tenant defaulted and ceased operating. The bid winner for Garland's Spokane store location did not enter into a lease with Garland; Garland found no tenant to lease its store space and received no rental income.

[7] WASH. CONST. art. I, § 23, and U.S. CONST. art I, § 10, respectively.

[8] WASH. CONST. art. I, § 16, and U.S. CONST. amend. V, respectively.

[I-1183] unconstitutionally impairs any contract.'" CP at 116 (citation omitted). The superior court granted the State's motion to strike Landlords' exhibits, reasoning that it could not consider such extrinsic evidence to "interpret" unambiguous contract terms. Verbatim Report of Proceedings (VRP) at 32.

The superior court also (1) ruled that because I-1183 had forced the State to terminate its liquor store leases, the State did not improperly terminate its leases or breach a duty of good faith and fair dealing; (2) granted the State's motion for judgment on the pleadings; and (3) dismissed Landlords' complaint with prejudice. Landlords appeal.

## ANALYSIS

### I. ANTICIPATORY REPUDIATION AND BREACH OF CONTRACT

Landlords appeal the superior court's dismissal of their complaint when it granted the State's CR 12(c) motion for judgment on the pleadings. They argue that the hypothetical facts in their complaint and the additional evidence they submitted stated a justiciable claim that the State deliberately misinterpreted I-1183 and that the State breached its lease obligations and anticipatorily repudiated its leases. The State responds that it fully complied with the leases and that lease provision Paragraph 3 gave the State the right to terminate the leases when the voters' initiative took away the State's previously exclusive right to sell liquor, thus preventing the State from carrying out the lease terms. We agree with the State.

### A. Standard of Review

We review de novo CR 12(c) dismissal rulings. *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 203, 289 P.3d 638 (2012). We examine the pleadings "to determine whether the claimant can prove any set of facts, consistent with the complaint, that would entitle the claimant to relief."

5

No. 44509-3-II

*Parrilla v. King County*, 138 Wn. App. 427, 431, 157 P.3d 879 (2007). On a CR 12(c) motion, the court presumes that the allegations asserted in the complaint are true. *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998).

B. Unambiguous Lease Termination Provision

Here, both leases included identical termination provisions, which provided, in part:

> [I]n the event that *the enactment of any law* or the decision of any court of competent jurisdiction shall prevent either party hereto from complying with or carrying out the terms of this Lease . . . then this Lease shall terminate and the parties hereto shall be released from any and all liability for any damage or loss which may result from such inability to comply therewith.

CP at 22, 33 (emphasis added).

Codifying I-1183, RCW 66.24.620 expressly provided, in part: "[The Liquor Control Board] must effect orderly closure of all state liquor stores no later than June 1, 2012, and must thereafter refrain from purchase, sale, or distribution of liquor." RCW 66.24.620(2). This new law plainly prohibited the State from selling alcohol and, thus, prevented the State from "complying with or carrying out"[9] the "use"[10] provision of its leases with Landlords. Regardless of whether the State permitted bid winners to choose alternate liquor store locations, or instead required bid winners to use the Landlords' original store locations bid upon,[11] the State could not

---

[9] CP at 22, 33.

[10] CP at 21-22, 32.

[11] *See* Landlords' argument that the State understood that I-1183 did not expressly permit the Liquor Control Board to expand potential liquor sale locations to within a one-mile radius of the former state liquor stores and, thus, deliberately misinterpreted the initiative in implementing a "Relocation Policy" that conflicted with the law. Br. of Appellant at 24.

6

continue leasing Landlords' properties for the leases' contractual purpose of providing locations for the State to sell liquor.[12]

We hold that (1) I-1183 and its RCW 66.24.620 codification triggered the lease termination provisions; (2) under the leases' plain language, enactment of this new law made it impossible for the State to continue selling liquor at Landlords' premises; and (3) therefore, the State did not anticipatorily repudiate or breach its leases with Landlords.

### C. Striking Landlords' Extrinsic Evidence

Landlords also argue that in striking their extrinsic evidence—offered to show that the State had deliberately misinterpreted I-1183—the superior court erred because such evidence is admissible even when the court believes that contract terms are unambiguous. The State responds that none of Landlords' extrinsic evidence was relevant to prove the meaning of any specific term in the leases. We agree with the State and hold that the superior court properly excluded the evidence.

---

[12] Landlords argue that the State could have assigned its rights to sell liquor under the leases because neither I-1183 nor the leases precluded the State's assigning its lease obligations to the bid winners, thereby avoiding lease terminations. This argument fails: Although the leases refer to Landlords "and assigns," there is no corresponding lease provision granting the State assignment rights. CP at 21, 31. Moreover, at the time the parties entered into these leases, the law gave the State the exclusive right to import and to sell liquor and, thus, there was no possibility that the State could assign this exclusive right to another. Former WAC 314-36-020 (2011); former RCW 66.16.010, .040 (2011). *See Colorado Structures, Inc. v. Ins. Co. of the West*, 161 Wn.2d 577, 588, 167 P.3d 1125 (2007) (courts construe contracts as a whole to effectuate all of the contract's provisions, so as not to render words superfluous); *see also Dep't of Ecology v. Tiger Oil Corp.*, 166 Wn. App. 720, 762, 271 P.3d 331 (2012) (We "avoid 'a strained or forced construction'" of contract provisions "and avoid interpretations 'leading to absurd results.'") (quoting *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 341, 738 P.2d 251 (1987)).

1. Standard of review

We review de novo all trial court rulings, including evidentiary rulings, made in conjunction with a summary judgment dismissal order. *See Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship*, 158 Wn. App. 203, 215, 242 P.3d 1 (2010) (citing *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)), *review denied*, 171 Wn.2d 1014 (2011). On a CR 12(c) motion, the court "may consider hypothetical facts not included in the record." *Tenore*, 136 Wn.2d at 330. When reviewing judgments on the pleadings under CR 12(c),

> "Washington follows the objective manifestation test for contracts." . . . Mutual assent to definite terms is normally a question of fact for the fact finder. . . . But a question of fact may be determined as a matter of law if reasonable minds could not differ.

*P.E. Sys.*, 176 Wn.2d at 207 (internal citations omitted) (quoting *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945 (2004)).[13]

To interpret a contract, we must determine the parties' intent, for which we apply the "'context rule.'" *Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn. App. 263, 274, 279 P.3d 943 (2012) (quoting *Shafer v. Bd. of Trs. of Sandy Hook Yacht Club Estates*, 76 Wn. App. 267, 275, 883 P.2d 1387 (1994)). This context rule allows a court, when "'viewing the contract as a whole, to consider extrinsic evidence, such as the circumstances leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective

---

[13] *See also Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County.*, 164 Wn. App. 641, 654-55, 266 P.3d 229 (2011) ("[S]ummary judgment on an issue of contract interpretation is proper where 'the parties' written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning.'") (quoting *Hall v. Custom Craft Fixtures, Inc.*, 87 Wn. App. 1, 9, 937 P.2d 1143 (1997)).

interpretations.'" *Roats*, 169 Wn. App. at 274 (quoting *Shafer*, 76 Wn. App. at 275). This rule applies "even when the disputed provision is unambiguous." *Id.*[14]

But our consideration of "surrounding circumstances and other extrinsic evidence" is limited "'to determin[ing] the meaning of *specific words and terms used*' and not to 'show an intention independent of the instrument' or to 'vary, contradict or modify the written word.'" *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005) (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695, 974 P.2d 836 (1999)). *See also* ER 402 ("Evidence which is not relevant is not admissible.").

### 2. Extrinsic evidence irrelevant

Here, the superior court could admit Landlords' extrinsic evidence only if it would help the court "'to determine the meaning of *specific words and terms used*'" in the leases. *Hearst*, 154 Wn.2d at 503 (quoting *Hollis*, 137 Wn.2d at 696). Landlords argue that, in addition to the context for the parties' understanding of I-1183's requirements, the evidence showed (1) the State "had been discussing and making contingency plans for privatization for five years before I-1183 was

---

[14] The Washington Supreme Court first adopted the "'context rule'" in *Berg v. Hudesman*:

> [The *Berg* Court] recognized that intent of the contracting parties cannot be interpreted without examining the context surrounding an instrument's execution. If relevant for determining mutual intent, extrinsic evidence may include (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties.

*Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 502, 115 P.3d 262 (2005) (citing *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990)). But later, in *Hearst*, the Supreme Court (1) cautioned that its *Berg* holding may have been "misunderstood as it implicates the admission of parol and extrinsic evidence"; and (2) expressly "acknowledge[d] that Washington continues to follow the objective manifestation theory of contracts." *Hearst*, 154 Wn.2d at 503.

adopted," yet the State had "made no provision for privatization in the leases"[15]; (2) after I-1183 was adopted, the State acknowledged in internal agency documents that introducing a Relocation Policy "'could be interpreted as violating the intent of I-1183'"[16]; and (3) the State considered but rejected the idea of assigning leases to bid winners, which Landlords contend would not have "'prevent[ed]'" the State from "'complying with or carrying out'" the lease terms. Br. of Appellant at 44 (quoting CP at 22, 33). Landlords' reasoning fails.

Neither the State's potential privatization contingency plan nor its intent in implementing a Relocation Policy is relevant to the meaning of any lease terms; nor are the State's interpretations of I-1183 or its alleged assignment rights under the leases relevant to understanding any lease terms. Because the extrinsic evidence at issue did not "'determine the meaning of *specific words and terms used*'" in the leases, it was not relevant for the superior court's consideration. *Hearst*, 154 Wn.2d at 503 (quoting *Hollis*, 137 Wn.2d at 696). We hold, therefore, that the superior court properly granted the State's motion to strike this extrinsic evidence.

## II. DUTY OF GOOD FAITH AND FAIR DEALING

Landlords further argue that, even if the State could terminate their leases based on I-1183's asset disposal requirements, the manner in which the State accomplished these lease terminations breached its duty of good faith and fair dealing. The State responds that a party breaches the duty of good faith and fair dealing only when performing a specific contract term; thus, the State did not breach such duty when it had fully performed under the leases until the point that the new law triggered the leases' termination provision. We agree with the State.

---

[15] Br. of Appellant at 40.

[16] Br. of Appellant at 41 (quoting CP at 361).

10

The duty of good faith and fair dealing "does not inject substantive terms into the contract; rather, 'it requires only that the parties perform in good faith the obligations imposed by their agreement'" and "'arises *only* in connection with the . . . underlying'" contract. *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 149-50, 317 P.3d 1074 (2014) (emphasis added) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)), *petition for review filed*, No. 90366-2 (Wash. June 12, 2014). Having already held that the State did not breach its leases, we further hold that it did not breach its duty of good faith and fair dealing when I-1183 provided the State with no alternative but to cease liquor sales, to terminate its leases with Landlords, and to auction to private parties the right to sell liquor at the Landlords' locations.[17] *See* RCW 66.24.620(2).

### III. CONSTITUTIONAL CLAIMS

Last, Landlords argue that the superior court committed legal error in dismissing their contracts clause and takings clause claims. They contend that (1) I-1183 did not require the State to terminate its leases; and (2) thus, the State's lease terminations "impaired" its contracts with Landlords, which constituted an unconstitutional taking of private property without just compensation. Br. of Appellant at 8. The State responds that it neither impaired a contract nor took private property without just compensation because the leases terminated by their own terms when enactment of the new law rendered the State unable to perform: By operation of law the State could no longer sell liquor on the Landlords' properties, or anywhere else; and, consequently,

---

[17] Again, as we have already remarked, termination of the leases was the State's only option because the lease terms (1) expressly provided that the Landlords' properties could be used only to sell alcoholic beverages and lottery products, and (2) did not provide for the Liquor Control Board to assign the leases.

there was no longer a contract to impair. Again, we agree with the State and we affirm the superior court's dismissal of Landlords' constitutional claims.

## A. Contracts Clause Claims

Both state and federal constitutions prohibit legislatures from enacting laws that impair existing contractual obligations. WASH. CONST. art. I, § 23; U.S. CONST. art I, § 10. "It is 'fundamental' that this prohibition against impairing contracts reaches any form of legislative action, including direct action by the people through the initiative process." *Pierce County v. State*, 159 Wn.2d 16, 27-28, 148 P.3d 1002 (2006) (quoting *Ruano v. Spellman*, 81 Wn.2d 820, 825, 505 P.2d 447 (1973)). In determining whether legislation unconstitutionally impairs an existing contractual obligation, our threshold inquiry is "'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Optimer Int'l., Inc. v. RP Bellevue, LLC*, 151 Wn. App. 954, 965, 214 P.3d 954 (2009) (quoting *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 653, 854 P.2d 23 (1993)), *aff'd*, 170 Wn.2d 768, 246 P.3d 785 (2011).

"An 'impairment is substantial if the complaining party relied on the supplanted part of the contract, and contracting parties are generally deemed to have relied on existing state law pertaining to interpretation and enforcement.'" *Optimer*, 151 Wn. App. at 965-66 (quoting *Margola*, 121 Wn.2d at 653). A "'contract is impaired by a statute which alters its terms, imposes new conditions or lessens its value.'" *Optimer*, 151 Wn. App. at 966 (quoting *Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.*, 123 Wn.2d 391, 404, 869 P.2d 28 (1994)). But this prohibition against contract impairment "'is not an absolute one,'" and we do not read it "'with literal exactness.'" *Optimer*, 151 Wn. App. at 965 (quoting *Tyrpak v. Daniels*, 124 Wn.2d 146, 151, 874 P.2d 1374 (1994)). Moreover, "legislation does not unconstitutionally impair contractual

12

obligations where the legislation constitutes an exercise of the police power in advancing a legitimate public purpose." *Optimer*, 151 Wn. App. at 966 (citing *Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wn. App. 1, 9, 776 P.2d 721 (1989)).

Here, both parties were sophisticated, understood the lease terms, and acknowledged by the leases' express termination provision that a change in the law might prevent compliance with the contracts or terminate the leases.[18] By including Paragraph 3 as their remedy for lease termination, the parties anticipated that a change in the law could prevent either party from "complying with or carrying out"[19] the lease terms, and they "intended the prescribed remedy as the sole remedy for the condition." *United Glass Workers' Local No. 188 v. Seitz*, 65 Wn.2d 640, 642, 399 P.2d 74 (1965); *Rainier Nat'l Bank v. Wells*, 65 Wn. App. 893, 899, 829 P.2d 1168 (1992). Thus, in exercising this lease termination provision (after the law was passed prohibiting the State from continuing to sell liquor), the State did not impair the contracts because the parties' rights and expectations remained the same as before the new law was passed.

The superior court correctly ruled that the "leases ceased to exist once [the] termination

---

[18] Neither party disputes the validity of Paragraph 3's lease termination provision.

[19] CP at 22, 33.

provision was triggered." VRP at 44. We hold that the superior court properly dismissed Landlords' contracts clause claims.

### B. Takings Clause Claims

The takings clause of the Fifth Amendment to the United States Constitution protects individuals against uncompensated takings of private property by both the federal and state governments. U.S. CONST. amend. V. Article I, section 16 of the Washington Constitution similarly provides, "No private property shall be taken or damaged for public or private use without just compensation having been first made."

In addressing Landlords' takings challenges to the State's implementation of I-1183, we begin with two threshold questions:

> First, whether the regulation destroys or derogates any fundamental attribute of property ownership, including the right to possess, to exclude others, to dispose of property, or to make some economically viable use of the property. If the landowner claims less than a "physical invasion" or a "total taking" and if a fundamental attribute of ownership is not otherwise implicated, we proceed to the second question. That question is whether the challenged regulation safeguards the public interest in health, safety, the environment, or the fiscal integrity of an area or whether the regulation "seeks less to prevent a harm than to impose on those regulated the requirement of providing an affirmative public benefit."

*Edmonds Shopping Ctr. Assocs. v. City of Edmonds*, 117 Wn. App. 344, 362, 71 P.3d 233 (2003) (footnotes and citations omitted) (quoting *Guimont v. Clarke*, 121 Wn.2d 586, 603, 854 P.2d 1

14

(1993)).[20]

Landlords argue that an agency regulation, such as the Liquor Control Board's adopting the Relocation Policy, "may constitute a taking 'if it goes beyond preventing a public *harm* [to] actually enhance . . . a publicly owned right in property.'" Br. of Appellant at 48 (some alterations in original) (internal quotation marks omitted) (quoting *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 14, 829 P.2d 765 (1992)). Landlords further argue that, by implementing the Relocation Policy, "the [Liquor Control Board] enhanced public ownership of the liquor rights the [Board] was selling by public auction by diminishing the property rights of state store landlords. [Landlords] should have been permitted to pursue their proper remedies: either invalidation of I-1183 or just compensation." Br. of Appellant at 48. These arguments fail.

Returning to the two threshold questions set out in *Edmonds Shopping Ctr.*, 117 Wn. App. at 362, we first note that Landlords do not allege any State action that destroyed or diminished any fundamental attribute of property ownership. On the contrary, the record shows that Landlords retained these fundamental property rights attributes: the rights to possess and to dispose of their properties, to exclude others, and to make some economically viable use of their properties. *Guimont*, 121 Wn.2d at 595. We next address the second threshold question—whether the

---

[20] We engage in additional analysis only if, in answering these two threshold questions, we determine either that the regulation (1) infringes on a fundamental attribute of ownership; or (2) goes beyond safeguarding the public interest in health, safety, the environment or the fiscal integrity of an area and instead imposes on those being regulated the requirement of providing an affirmative public benefit. *Guimont*, 121 Wn.2d at 603; *Edmonds Shopping Ctr. Assocs.*, 117 Wn. App. at 362. Such additional analysis would require us to answer two more questions: "First, whether the regulation advances a legitimate state interest"; and second, using a balancing test, whether "the state interest in the regulation is outweighed by its adverse economic impact to the landowner . . . , the extent the regulation interferes with investment-backed expectations, and the character of the government action." *Edmonds Shopping Ctr.*, 117 Wn. App. at 362-63 (citing *Guimont*, 121 Wn.2d at 604).

challenged action seeks less to prevent a public harm than to provide an affirmative benefit to the public agency. *Edmonds Shopping Ctr.*, 117 Wn. App. at 362. Although the exclusivity of the right to sell liquor, which the State auctioned to private bidders, may increase the value of this right, the legislature's purpose for such exclusivity is to prevent proliferation of private liquor stores. This purpose lies at the heart of the State's police power and is directed at preventing a public harm. *See Edmonds Shopping Ctr.*, 117 Wn. App. at 362; *State v. Audley*, 77 Wn. App. 897, 901, 894 P.2d 1359 (1995). Answering these *Edmonds Shopping Ctr* threshold inquiries in the affirmative, we hold that the State's actions did not constitute a taking; thus, further analysis is not required.

We hold that the State did not commit an unconstitutional taking by exercising the lease termination provision when enactment of the new law prohibiting the State from selling liquor rendered it unable to perform under the leases.

We affirm.

_____
Hunt, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Lee, J.

16