FILED
COURT OF APPEALS
DIVISION II

2015 JUN -4 AM 8:33

STATE OF WASHINGTON

BY_____
DEPUTY

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| TILLMAN CARR individually; CAL FARRER and JENELL FARRER, a marital community; KUO-YING FRENZEL, individually; JULIE GANAS, individually; WILLIAM B. MINAGLIA, individually; DARRYL and ROSE HUDSON, a marital community; KEITH PETERSON, individually; KATHRYN DEBERNARDI, individually; KATHERINE MEADE, individually; ROB and SHARA COFFMAN, a marital community; and PAMELA SMITH, individually, <br><br> Appellants, <br><br> v. <br><br> THE STATE OF WASHINGTON by and through the WASHINGTON STATE LIQUOR CONTROL BOARD, a board of the State of Washington; and the WASHINGTON STATE DEPARTMENT OF REVENUE, a department of the State of Washington, <br><br> Respondents. | No. 46590-6-II <br><br><br><br> PUBLISHED OPINION |

LEE, J. — A group of former contract liquor store owners (collectively "the Owners") appeal the superior court's order dismissing their complaint against the Washington State Liquor Control Board (Board) and the Washington State Department of Revenue (Department). After Initiative 1183 (I-1183) was adopted, the sale and distribution of liquor in Washington was privatized. As a result, the Board terminated the contracts it had with current liquor store owners. The Owners filed a complaint against the Board and the Department based on the termination of their contracts and alleged violations of RCW 66.24.620 and section 303 of I-1183.

Under our recent decision in *Fedway Marketplace West, LLC v. State*, 183 Wn. App. 860, 336 P.3d 615 (2014), *review denied*, 182 Wn.2d 1013 (2015), we hold that the superior court properly dismissed the Owners' contract claims. And, the superior court properly determined that there were no private causes of action created under RCW 66.24.620 or section 303 of I-1183. Accordingly, we affirm the superior court's order granting summary judgment and dismissing the Owners' complaint.

## FACTS

Tillman Carr, Cal and Jenell Farrer, Kuo-Ying Frenzel, Julie Ganas, William Minaglia, Darryl and Rose Hudson, Keith Peterson, Kathryn Debernardi, Katherine Meade, Rob and Shara Coffman, and Pamela Smith ("the Owners") all owned contract liquor stores. The Owners entered into new, identical, five-year contracts with the Board, effective June 30, 2011. Under the contracts, the Owners sold liquor on behalf of the Board in exchange for a base rate compensation and commission based on monthly net sales. The contracts contained the following provisions governing termination of the contract:

> 6.5 *TERMINATION BY MUTUAL AGREEMENT*
> The [Board] and the Contractor may terminate this Contract in whole or in part, at any time, by mutual agreement.
>
> . . . .
>
> 6.9 *TERMINATION FOR WITHDRAWAL OF AUTHORITY*
> In the event that the [Board's] authority to perform any of its duties relating to this Contract is withdrawn, reduced, or limited in any way after the commencement of this Contract and prior to normal completion, the [Board] may terminate this Contract in whole or in part, by seven (7) calendar day's written notice to Contractor. Contractor shall have no right of appeal when this clause is exercised by the [Board].

Clerk's Papers (CP) at 148-49.

In November 2011, the people of Washington State passed I-1183, an initiative privatizing the sale of liquor. I-1183 required the Board to close all state liquor stores by June 1, 2012. LAWS OF 2012, ch. 2 § 102 (codified at RCW 66.24.620(2)). To comply with I-1183, the Board offered the Owners a contract amendment that changed the contract termination date to May 31, 2012. All of the Owners, except Carr and Farrer, signed the contract amendment. The contract amendment also allowed the Owners to sell liquor to licensees (primarily bars and restaurants) at the Board's discounted rate and allowed the Owners to solicit licensee accounts prior to June 1, 2012. And, the contract amendment allowed the Owners to make deliveries directly to licensees.

In February 2012, the Board presented another contract amendment that allowed the Owners to purchase their current liquor inventory from the Board. All the Owners signed the second contract amendment.

As a result of I-1183, many owners lost licensee accounts because they were required to pay a higher percentage of their sales to the State. Additionally, overall sales dropped considerably, and some owners closed or sold their stores.

On November 9, 2012, the Owners filed a complaint against the Board and the Department. The Owners alleged that (1) the Board breached its contract with the Owners, (2) I-1183 unconstitutionally interfered with the owner's contracts with the Board, (3) the termination of their contracts was an unconstitutional taking, (4) the Board failed to "avert harm" from the privatization of liquor as required by RCW 66.24.620(2),[1] and (5) the Department failed to comply with the

---

[1] RCW 66.24.620(6)(b) states:

> The transition must include, without limitation, a provision for applying operating and asset sale revenues of the board to just and reasonable measures to

requirement under section 303 of I-1183 to create rules addressing claims that I-1183 unconstitutionally impaired contracts.[2]

The Department and the Board moved for summary judgment. The Owners filed a cross motion for partial summary judgment on all issues except damages. The superior court granted the Department's and the Board's motion for summary judgment, and dismissed all of the Owners' claims. The Owners appeal.[3]

## ANALYSIS

The Owners argue that the superior court improperly granted the Department's and the Board's motion for summary judgment. We review the superior court's ruling on a motion for summary judgment de novo. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). "A material fact is one on

---

avert harm to interests of tribes, military buyers, and nonemployee liquor store operators under then existing contracts for supply by the board of distilled spirits, taking into account present value of issuance of a spirits retail license to the holder of such interest. The provision may extend beyond the time for completion of transition to a spirits licensee system.

[2] Laws of 2012, ch. 3, section 303 states:

The department of revenue must develop rules and procedures to address claims that this act unconstitutionally impairs any contract with the state and to provide a means for reasonable compensation of claims it finds valid, funded first from revenues based on spirits licensing and sale under this act.

[3] The Owners originally appealed directly to our Supreme Court. Our Supreme Court denied direct review and transferred the Owners' appeal for consideration by this court.

which the outcome of the litigation depends" in whole or in part. *Dania, Inc. v. Skanska USA Bldg. Inc.*, 185 Wn. App. 359, 365, 340 P.3d 984 (2014). "[W]e consider all the facts submitted and the reasonable inferences therefrom in the light most favorable to the nonmoving party." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). Here, there was no genuine issue of material fact.

A.      CONTRACT CLAIMS

The Owners make three claims related specifically to the termination of their contracts with the Board. First, the Owners argue that the Board breached its contracts by terminating the contracts prior to the expiration of the five-year term. Second, the Owners argue that I-1183 unconstitutionally impaired the Board's contracts with the Owners. Third, the Owners argue that the early termination of their contracts is an unconstitutional taking.

Recently, we addressed nearly identical arguments in *Fedway Marketplace*, 183 Wn. App. 860. In *Fedway Marketplace*, landlords sued the Board for breach of its leases with the landlords of its state-run liquor stores. *Id.* at 865-67. After I-1183 passed, the Board terminated its leases with the landlords based on a lease termination clause that terminated the leases if the Board lost the authority to continue to sell liquor. *Id.* at 866. The landlords claimed that (1) the Board breached the terms of the lease, (2) I-1183 unconstitutionally impaired the Board's contracts, and (3) the termination of the leases constituted an unconstitutional taking. *Id.* at 866-67. We affirmed the trial court's order dismissing the landlords' claims. *Id.* at 868 , 873, 874. Our holdings in *Fedway Marketplace* control the owner's contract claims here.

1. Breach of Contract Claim

In *Fedway Marketplace*, the leases contained a specific termination clause, providing that each lease would terminate upon the enactment of any law that prevented either party from carrying out the lease terms. *Id.* at 868. We held that the termination clause in each lease was triggered when I-1183 passed and the Board was no longer permitted to sell liquor. *Id.* at 869-70. Therefore, the Board complied with the express terms of each lease and did not breach the contract. *Id.* at 870. Because the Board complied with the express terms of the leases, the Board did not breach the terms of each lease between the landlords and the Board. *Id.* The same situation exists here.

The contracts between the Board and the Owners contain an express provision stating that the contract can be terminated by the Board if "the [Board's] authority to perform any of its duties relating to this Contract is withdrawn, reduced, or limited in any way." CP at 149. And, the contract contains a provision allowing the contract to terminate based on mutual agreement. Here, many of the Owners agreed to amend the contract and establish a termination date of May 31, 2012. Therefore, those contracts were terminated under the express provision allowing termination by mutual agreement. The remaining owners' contracts were terminated by the provision allowing the Board to terminate the contract if its authority to sell liquor was withdrawn. Therefore, the contracts were terminated under the express, unambiguous termination provisions contained in the contracts.

As in *Fedway Marketplace*, the Board complied with the express terms of the contract. Therefore, under *Fedway Marketplace*, the Board did not breach its contracts with the Owners. 183 Wn. App. at 870.

6

2. Unconstitutional Impairment of Contracts

Like the Owners here, the landlords in *Fedway Marketplace* argued that I-1183 unconstitutionally impaired the State's existing contract obligations. *Id.* at 864. Article 1, section 23 of the Washington Constitution and article I, section 10 of the United States Constitution prohibit any legislative action from impairing an existing contractual obligation. In *Fedway Marketplace*, we determined that the landlords' contracts were not impaired because, based on the express provision terminating the lease upon a change in the law, "the parties' rights and expectations remained the same as before the new law was passed." *Id.* at 875.

Here, the contracts between the Owners and the Board contained express provisions addressing the effect of a change in the law. I-1183 triggered the termination provision in the contracts, but it did not change the terms of the contracts. Therefore, like the landlords in *Fedway Marketplace*, the Owners' rights and expectations under their contracts with the Board did not change when I-1183 was passed. *Id.* at 875. Consequently, I-1183 did not unconstitutionally impair the Board's contract with the Owners.

3. Unconstitutional Taking

Like the Owners here, the landlords in *Fedway Marketplace* also argued that the Board's termination of their leases resulted in an unconstitutional taking. We held in *Fedway Marketplace* that the landlords had not shown a total taking because they retained their fundamental property rights, specifically the right to possess and dispose of their property, to exclude others, and make an economic use of the property. *Id.* at 877. Because the landlords could not show a total taking, they had to show that I-1183 "goes beyond preventing real harm to the public[,] which is directly caused by the prohibited use of the property and instead imposes on those regulated the

7

requirement of providing an affirmative public benefit." *Guimont v. Clarke*, 121 Wn.2d 586, 603, 854 P.2d 1 (1993), *cert. denied*, 510 U.S. 1176 (1994). We determined that I-1183 does not go beyond preventing public harm, and that its purpose is at "the heart of the State's police power." *Fedway Marketplace*, 183 Wn. App. at 878. Therefore, the Board's termination of the leases did not constitute a taking. *Id.*

Here, the Owners appear to argue that the "property" that was taken was the potential future earnings under their contracts. Their claim fails.

Like in *Fedway*, there is not a total taking because the Owners retained their fundamental rights to possess and dispose of their property, exclude others from their property, and make economic use of their property. Because there was not a total taking, the Owners must show that the regulation "goes beyond preventing real harm to the public[,] which is directly caused by the prohibited use of the property[,] and instead imposes on those regulated the requirement of providing an affirmative public benefit." *Guimont*, 121 Wn.2d at 603. In *Fedway Marketplace*, we determined that the purpose of I-1183 was directed at preventing a public harm—the "proliferation of private liquor stores." *Fedway Marketplace*, 183 Wn. App. at 878. Because the Owners cannot demonstrate a total taking, and I-1183 does not go "beyond preventing real harm," the Board terminating the Owners' contracts was not an unconstitutional taking. *Guimont*, 121 Wn.2d at 603; *Fedway Marketplace*, 183 Wn. App. at 877-78.

Thus, the enactment of I-1183 triggered an existing termination provision in the Owners' contract, and the contracts were terminated under their express terms; the Board did not breach the contracts. Because the contracts were terminated under their express terms, I-1183 did not unconstitutionally impair the contracts. And, I-1183 did not result in an unconstitutional taking.

Therefore, the superior court did not err in granting the motion for summary judgment on the Owners' contract claims.

## B.    PRIVATE CAUSE OF ACTION UNDER I-1183

The Owners also argue that they are entitled to monetary damages based on the Board's alleged violation of RCW 66.24.620(6)(b)[4] and the Department's alleged violation of Laws of 2012, chapter 3, section 303. To be entitled to monetary damages under either provision of I-1183, the Owners must show that the I-1183 provisions create a private cause of action. Here, neither provision of I-1183 creates a private cause of action that entitles the Owners to relief.

When a statute does not explicitly create a private cause of action, "'a cause of action may be implied from a statutory provision when the legislature creates a right or obligation without a corresponding remedy.'" *Schatz v. Dep't of Soc. & Health Servs.*, 178 Wn. App. 16, 29, 314 P.3d 406 (2013) (quoting *Ducote v. Dep't of Soc. & Health Servs.*, 167 Wn.2d 697, 703, 222 P.3d 785 (2009)). We consider three factors to determine if a private cause of action is implied in a statutory provision: "(1) whether the plaintiffs are within the class of persons for whose benefit the statute was enacted, (2) whether legislative intent supports, creating or denying a remedy, and (3) whether implying a remedy is consistent with the underlying purpose of the legislation." *Id.* at 30.

### 1.    RCW 66.24.620(6)(b): Aversion of Harm

The Owners claim that RCW 66.24.620(6)(b) creates a private cause of action that entitles them to monetary damages for the losses suffered as a result of the privatization of liquor sales. RCW 66.24.620(6)(b) states:

---

[4] LAWS OF 2012, ch. 2, § 102(6)(b).

> The transition must include, without limitation, a provision for applying operating and asset sale revenues of the board to just and reasonable measures to avert harm to interests of tribes, military buyers, and nonemployee liquor store operators under then existing contracts for supply by the board of distilled spirits, taking into account present value of issuance of a spirits retail license to the holder of such interest. The provision may extend beyond the time for completion of transition to a spirits licensee system.

Here, the Owners are nonemployee liquor store owners, as referenced in the statutory provision, and so are within the class for whose benefit the statute was created. However, creating a private cause of action is not supported by either the legislative intent or the underlying purpose of the legislation. Therefore, RCW 66.24.620(6)(b) does not entitle the Owners to sue the Department for monetary damages.

When determining whether legislative intent supports creating a private cause of action we employ principles of statutory construction and interpretation. *See McCandlish Elec., Inc. v. Will Constr. Co.*, 107 Wn. App. 85, 94-95, 25 P.3d 1057, *review denied*, 145 Wn.2d 1012 (2001). Statutory interpretation is a question of law we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). To determine legislative intent, we begin by looking at the plain language of the statute. *Id.* When looking at the plain language of the statute, we must consider "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)) (internal quotation marks omitted). Only "if the statute is ambiguous, [may] 'this court . . . look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent.'" *Id.* at 527 (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

As an initial matter, there is no explicit legislative intent to create a private cause of action under RCW 66.24.620(6)(b). Instead, the Owners rely on the terms "applying operating and asset sale revenues of the board" and "avert harm" to argue that the provision creates an implied private cause of action for monetary damages based on economic loss resulting from privatization. However, looking at the provision as a whole and within the context of the entire legislation, a plain reading of the provision does not support the conclusion that the legislature intended to create a private cause of action for monetary damages under RCW 66.24.620(6)(b).

The plain language of RCW 66.24.620(6)(b) requires the Department to take "measures" to avert harm. RCW 66.24.620(6)(b) does not use the term "compensation"; instead, RCW 66.24.620(6)(b) uses the much broader term "measures." "Measures," as used in RCW 66.24.620(6)(b), is not the equivalent of "compensation." Compensation would be a very specific measure that the Department could take to avert harm. The use of the broad term "measure" indicates that the legislature intended to allow the Department to exercise its discretion to determine what measures would be just and reasonable. The term measure can encompass all of the non-monetary actions taken by the Department during the transition to privatization.[5]

Further, "avert harm" is not the equivalent of "compensate for economic damages" as the Owners suggest. "Avert" means to anticipate and ward off. WEBSTER'S THIRD INTERNATIONAL DICTIONARY 151 (1969). The term avert is, by definition, anticipatory and proactive. It is not reactive. By requiring the Board to take "just and reasonable measures to avert harm" the statute

---

[5] For example, the Department allowed the Owners to purchase their existing inventory of state-owned liquor at a reduced price. The Department also allowed the Owners to solicit licensee accounts prior to the effective date of privatization and deliver liquor to licensee accounts. And, the Department allowed the Owners to begin storing liquor at off-site locations.

contemplates that the Board take into consideration the possible effects of privatization and take action to help mitigate the possible resulting harm. RCW 66.24.620(6)(b). It does not contemplate waiting until after the harm has been suffered and then compensating the party for the resulting harm. And, the proactive nature of the provision implies that the legislature did not intend for the provision to allow for full compensation for any harm suffered. Therefore, a plain reading of the language of the statute does not support the conclusion that the legislature intended RCW 66.24.620(6)(b) to create a private cause of action.

Additionally, creating a private cause of action is not consistent with the underlying purpose of the statute. The people were very specific regarding their intent in enacting I-1183:

> The people of the state of Washington, in enacting this initiative measure, find that the state government monopoly on liquor distribution and liquor stores in Washington and the state government regulations that arbitrarily restrict the wholesale distribution and pricing of wine are outdated, inefficient, and costly to local taxpayers, consumers, distributors, and retailers. Therefore, the people wish to privatize and modernize both wholesale distribution and retail sales of liquor and remove outdated restrictions on the wholesale distribution of wine by enacting this initiative.

LAWS OF 2012, ch. 2, § 101(1). The people listed 15 things the initiative was intended to do. Among other things, the initiative specifically noted that one purpose of the initiative was to "provide increased funding for state and local government services." LAWS OF 2012, ch. 2, § 101(2)(a). And, the people were clear that the purpose of privatizing liquor distribution was to allow "the state to focus on the more appropriate government role of enforcing liquor laws and protecting public health and safety concerning all alcoholic beverages." LAWS OF 2012, ch. 2, § 101(2)(b). Nothing contained in the stated purpose of privatizing liquor distribution indicates that the underlying purpose of the initiative is consistent with using proceeds from the transition from

a state-run system to a privatized system to compensate former contract liquor store owners for all economic damages suffered from the enactment of I-1183.

Creating a private cause of action from RCW 66.24.620(6)(b) would be contrary to the legislative intent and the underlying purpose of I-1183. Therefore, the Owners do not have a cause of action for monetary damages as a result of the Board's alleged violation of RCW 66.24.620(6)(b). The superior court properly granted the Board's motion for summary judgment on the Owners' claim that they are entitled to compensation under RCW 66.24.620(6)(b).

2.       LAWS OF 2012, ch. 3, § 303: Department of Revenue Rulemaking

The Owners also assert that they are entitled to monetary damages for the Department's failure to engage in rulemaking under Laws of 2012, chapter 3, section 303. The text of Laws of 2012, chapter 3, section 303 states:

> The department of revenue must develop rules and procedures to address claims that this act unconstitutionally impairs any contract with the state and to provide a means for reasonable compensation of claims it finds valid, funded first from revenues based on spirits licensing and sale under this act.

However, "[a]n administrative body does not have authority to determine the constitutionality of the law it administers; only the courts have that power." *Bare v. Gorton*, 84 Wn.2d 380, 383, 526 P.2d 379 (1974). After the people enacted I-1183, the Department recognized this limitation on its authority and issued a special notice stating, in relevant part:

> Because the Department lacks the authority to carry out the intent and purpose of I-1183 § 303, the Department will not develop rules or procedures concerning issues of constitutional impairment. The Department's instruction in all cases of alleged constitutional impairment of contract related to I-1183 is for the claimant to file its claim directly with a court of competent jurisdiction.

CP at 112. By issuing the special notice, the Department took the only step that was within its authority to take. The Department cannot be expected to engage in rule making on topics that are outside of the scope of the Department's authority.

Moreover, there is no precedent for establishing a private cause of action for an agency's failure to engage in rule-making. Chapter 35.04 RCW provides the appropriate mechanism for challenging an agency's action or failure to act. The remedies available are expressly limited by RCW 34.05.574. "The court may award damages, compensation, or ancillary relief only to the extent *expressly authorized* by another provision of law." RCW 34.05.574(3) (emphasis added). Laws of 2012, chapter 3, section 303 does not provide for damages or compensation based on the Department's failure to engage in rule making.

The Owners also seem to argue that Laws of 2012, chapter 3, section 303 creates a private cause of action requiring the Department to pay them compensation for the termination of their contracts. However, to the extent that Laws of 2012, chapter 3, section 303 creates a claim for compensation, it is limited to a claim that I-1183 unconstitutionally impairs contracts. For the reasons explained above, I-1183 did not unconstitutionally impair the Owners' contracts with the Department. Therefore, they would not be entitled to compensation under Laws of 2012, chapter 3, section 303.

The Owners do not have a private cause of action for monetary damages under either RCW 66.24.620(6)(b) or Laws of 2012, chapter 3, section 303. Therefore, the superior court properly granted the Department's and the Board's motions for summary judgment based on the alleged violations of specific provisions of I-1183.

14

No. 46590-6-II

We affirm.

_____
Lee, J.

We concur:

_____
Johanson, C.J.

_____
Maxa, J.

15