# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| JAMES KELLY, | No. 47941-9-II |
| Appellant, | |
| v. | |
| CAVALRY PORTFOLIO SERVICES LLC, and SARAH ELIZABETH DAVENPORT, a Washington debt collection attorney, license #45269 | UNPUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — James Kelly appeals the trial court's order granting Cavalry Portfolio Services, LLC's ("Cavalry") CR 12(c) motion for judgment on the pleadings. Kelly argues that the pleadings sustain his Consumer Protection Act (CPA) claim. Because Kelly failed to plead facts which, even if true, demonstrated Cavalry's act was unfair or deceptive, and because he failed to establish a prima facie element in his CPA claim, the trial court properly dismissed the case. We affirm.

## FACTS

Kelly obtained a credit card from Bank of America/FIA Card Service. On November 29, 2008, Kelly's account was charged off when he defaulted on his debt repayment obligations. On

December 27, 2011, Cavalry SPV I, LLC ("Cavalry SPV"), an affiliate of Cavalry, bought Kelly's defaulted credit card account.[1]

On January 9, 2012, Cavalry sent Kelly a collections letter regarding his defaulted credit card account and associated debt. It informed Kelly that another entity purchased his defaulted account and Cavalry collected payments on the debt. While the letter accurately stated the particulars of Kelly's defaulted debt, it erroneously identified Cavalry Investments, LLC ("Cavalry Investments")[2] as the purchaser of Kelly's defaulted account instead of Cavalry SPV. The letter included a detachable payment coupon addressed to Cavalry and requested that Kelly make checks payable to Cavalry. It did not direct payments to the purchaser of Kelly's defaulted account. The letter informed Kelly he had 30 days to dispute any portion of the debt.

On August 8, Suttell & Hammer (Suttell), Cavalry SPV's lawyer, sent a letter to Kelly. It demanded payment and correctly identified Cavalry SPV as the owner of Kelly's defaulted account. The letter informed Kelly that he had 30 days to notify Suttell to dispute any portion of the debt.

On April 17, 2015, Kelly filed a complaint alleging that Cavalry violated the CPA because it misidentified the purchaser of the debt which in turn confused and misled Kelly.[3] In support of

---

[1] Cavalry is a servicing entity that services and collects debts purchased by affiliate purchasing entities. Affiliate purchasing entities include Cavalry SPV. Cavalry and Cavalry SPV are different limited liability companies.

[2] Cavalry Investments is another affiliate of Cavalry. Cavalry and Cavalry Investments are different limited liability companies.

[3] A substantial portion of the facts alleged in Kelly's complaint concerned a prior debt collection lawsuit between Cavalry SPV and Kelly. Cavalry, however, was not a party to the referenced lawsuit and denied allegations that referenced Cavalry as a party to that lawsuit.

In that case, a Cavalry employee testified at a hearing as an authorized representative on behalf of Cavalry SPV. The employee testified that Cavalry SPV owned Kelly's defaulted account but the

his claim, Kelly alleged that since Cavalry SPV purchased his account in the same batch of tens of thousands of other defaulted accounts, letters with the same error were sent to tens of thousands of other Washington consumers, similarly misleading them. Kelly also plead that Cavalry's act caused him financial injuries because he had to investigate the matter, and that Cavalry's actions would repeat and continue to injure other Washington consumers.

In its answer, Cavalry admitted that the letter erroneously identified which Cavalry affiliate purchased Kelly's debt. Cavalry denied that this error constituted an unfair or deceptive act and denied that it violated the CPA. Cavalry also denied that the error injured Kelly and denied the alleged future harm to other Washington consumers. Cavalry also denied that Kelly had a basis for its good faith belief that tens of thousands of others received letters with the same error and were similarly misled.

Cavalry filed a CR 12(c) motion for judgment on the pleadings, arguing that Kelly's claim failed because he could not establish four of the five elements of a CPA case. Cavalry argued that implicit in the meaning of "deceptive act" under the CPA is the understanding that the practice misleads or misrepresents something of material importance. Cavalry further argued that because the letter accurately stated the material particulars of the debt and did not misrepresent the nature of the obligation, it did not commit an unfair or deceptive act as a matter of law.

Kelly responded to the motion, arguing that Cavalry's unfair and deceptive act caused him financial injury by forcing him to pay for a credit report, hire an attorney, and spend time and

---

remainder of the details in the January 9, 2012 letter was accurate. The employee explained that the error was made by a letter house—a third-party vendor used by Cavalry and Cavalry affiliates—which generates the initial demand letters to consumers. The information provided to the vendor correctly identified the owner as Cavalry SPV. The employee also testified that more than 10,000 accounts were purchased in the same agreement by Cavalry SPV; however, Kelly's case was the only case to her knowledge where this discrepancy ever arose.

money to uncover the true owner of the account. Kelly also argued that Cavalry's act was a material misrepresentation because "identifying the true owner of a purchased account is the most important part of the collections process." Clerk's Papers (CP) at 383.

On July 31, 2015, the trial court heard arguments on the motion. The parties agreed that Kelly defaulted on his debt, and that the contents of the letter were accurate except for the purchasing entity's name. Both the parties and the trial court agreed that the sole issue was whether Cavalry's error was unfair or deceptive. When asked by the trial court how naming the wrong owner of the account in error was considered deceptive, Kelly argued that it was deceptive because it was confusing. Kelly further argued that he should be held to a "least sophisticated consumer" standard and that a fact finder must decide whether the act was unfair or deceptive. RP at 15, 16. Kelly also contended that there was no requirement for the misrepresentation to be material. In response, Cavalry asserted that whether an act was unfair or deceptive under the CPA was a question of law, and whether a particular action rose to a CPA violation was a question of law.

The trial court granted Cavalry's CR 12(c) motion for judgment on the pleadings and dismissed Kelly's CPA complaint. Kelly appeals.

## ANALYSIS

The sole issue in this appeal is Kelly's argument that the trial court erred in dismissing his CPA claim because inaccurately naming the purchaser of his account constituted an unfair and deceptive act. Cavalry contends that misnaming the purchaser of the account in error was an unintentional act or immaterial mistake, and therefore not deceptive. We agree with Cavalry.

I.    STANDARD OF REVIEW

We review an order of dismissal under CR 12(c) motion for judgment on the pleadings de novo, engaging in the same inquiry as the trial court. *P.E. Sys., LLC v. CPI Corp*., 176 Wn.2d

4

198, 203, 289 P.3d 638 (2012). CR 12(c) states, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "We examine the pleadings 'to determine whether the claimant can prove any set of facts, consistent with the complaint, that would entitle the claimant to relief.'" *Fedway Marketplace W., LLC v. State*, 183 Wn. App. 860, 868, 336 P.3d 615 (2014) (quoting *Parrilla v. King County*, 138 Wn. App. 427, 431, 157 P.3d 879 (2007)).

In reviewing a CR 12(c) motion, we presume that the allegations asserted in the complaint are true. *Fedway Marketplace W.*, 183 Wn. App. at 868. But we are not required to accept the complaint's legal conclusions. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 120, 744 P.2d 1032 (1987), 750 P.2d 254 (1988).

We treat a CR 12(c) motion for judgment on the pleadings identically to a CR 12(b)(6) motion to dismiss for failure to state a claim. *P.E. Sys.*, 176 Wn.2d at 203. Like a CR 12(b)(6) motion, the purpose of a CR 12(c) motion is to determine if a plaintiff can prove any set of facts that would justify relief. *P.E. Sys.*, 176 Wn.2d at 203. CR 12(b)(6) provides for dismissal of a complaint if it fails to state a claim upon which relief can be granted. *State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm.*, 135 Wn.2d 618, 623, 957 P.2d 691 (1998).

## II.    CPA CLAIM

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To establish a private CPA action, a plaintiff must prove five elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to the plaintiff in his or her business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The CPA should be liberally construed. *Michael v.*

*Mosquera-Lacy*, 165 Wn.2d 595, 602, 200 P.3d 695 (2009). Only the first element is at issue in this case. The failure of one element is fatal to the claim. *Nguyen v. Doak Homes, Inc.*, 140 Wn. App. 726, 733, 167 P.3d 1162 (2007).

Whether an alleged act is unfair or deceptive presents a question of law. *Trujillo v. Nw. Tr. Servs., Inc.,* 183 Wn.2d 820, 835, 355 P.3d 1100 (2015). The CPA does not define "unfair or deceptive act or practice. Implicit in the definition of 'deceptive' is the understanding that the practice misleads or misrepresents something of material importance." *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wn. App. 210, 226, 135 P.3d 499 (2006). A consumer may establish an unfair or deceptive act by showing either that an act or practice has a capacity to deceive a substantial portion of the public, or that the alleged act constitutes a per se unfair trade practice. *Holiday Resort*, 134 Wn. App. at 226. A per se unfair trade practice exists when a statute which has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce has been violated. *Hangman Ridge*, 105 Wn.2d at 786.

The letter Kelly received from Cavalry notified him that his credit card company sold his defaulted account and Cavalry was seeking to collect that debt. While the letter accurately stated the particulars of Kelly's defaulted debt, and who was collecting on the debt, it mistakenly identified which Cavalry affiliate had purchased his debt.

Kelly argues that even if Cavalry's notice letter accurately stated the particulars of the debt, the act of mistakenly identifying the purchaser of the debt was still deceptive. To support his argument, Kelly relies on *Panag v. Famers Insurance Co. of Washington*, 166 Wn.2d 27, 204 P.3d 885 (2009). *Panag*, however, is factually dissimilar to Kelly's case. That case involved a collections agency that sent out notices on behalf of an uninsured motorist policy listing an amount due. *Panag*, 166 Wn.2d at 35-36. The content of the notice made it appear to be a collections

6

notice for a debt certain, when in reality all the collector had was a subrogation claim. *Panag*, 166 Wn.2d at 57. The *Panag* court held that an ordinary consumer would not understand the meaning of a subrogation claim and would likely interpret the collection notice as representing liquidated debt that the recipient was bound to pay, rather than a potential tort claim subject to dispute. *Panag*, 166 Wn.2d at 50. Cavalry argues that, unlike *Panag*, its notice letter did not misrepresent the nature of a purported obligation. The letter was accurate in all *material* respects: it concerned Kelly's unpaid consumer debt, and it was undisputed that the letter accurately stated the particulars of the debt.

Additionally, Cavalry's letter accurately stated which entity would be collecting payments on Kelly's debt. The letter specified that Kelly's account was referred to Cavalry for collection. It also included a detachable payment coupon addressed to Cavalry and requested that Kelly make checks payable to Cavalry. The letter did not state that payments were to be made to the purchaser of Kelly's defaulted account. Further, no argument was raised by Kelly that Cavalry did not have the authority to collect on his debt. No facts were plead—and no hypothetical can be set forth— where an entity other than Cavalry was collecting on Kelly's debt based upon the reading of the letter. We conclude that Kelly did not plead facts to show that mistakenly identifying the purchaser of his debt misled or misrepresented something of material importance.

Kelly also argues that we should apply the "least sophisticated consumer" standard when determining whether or not Cavalry's act had the capacity to deceive. CP at 393. In support of his argument, Kelly cites to *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222 (9th Cir. 1988). CP at 393. *Swanson*, however, concerns a claim under the Fair Debt Collection Practices Act (FDCPA). Because Kelly did not assert a FDCPA claim, the "least sophisticated debtor" standard does not apply.

Kelly further alleges that likely tens of thousands of letters with the same error were sent to other Washington consumers. He seems to argue that because his defaulted account was in the same batch of tens of thousands of accounts Cavalry SPV purchased, it was likely that letters with the same error were sent to thousands of other consumers; therefore, Cavalry's act had the capacity to deceive a substantial portion of the population. Even if this allegation was proven to be true, the facts as pled do not show that Cavalry's act had the capacity to deceive a substantial portion of the population. As previously stated, it was clear from the letter that Cavalry was the sole entity collecting on the account. CP at 186. No argument was raised alleging that Cavalry did not have authority to collect, or that another entity—Cavalry SPV or Cavalry Investments—was collecting on Kelly's debt based on the reading of the letter. Given this, even if Kelly's allegation was true, the error would not have the capacity to deceive a substantial portion of the population. We conclude that Kelly did not plead facts to show the error as to who purchased his account was of material importance that misled Kelly and, had the capacity to deceive a substantial portion of the public. [4]

Kelly also argues that the two letters that he received, taken together, made Cavalry's act unfair and deceptive. Kelly seems to argue that because the demand letter sent by Suttell indicated that Cavalry SPV was the purchaser of the account, and that Cavalry's notice letter indicated that Cavalry Investments was the purchaser of the account, it was unfair and substantially confused Kelly. Kelly also asserted that he wanted to pay the account but could not figure out which company truly owned the account.

---

[4] Kelly also alleges that Cavalry has a long history of abusive business practices and is the third most complained about debt collector in the nation. Even if these allegations were proven to be true, it does not show that Cavalry, in this case, committed an unfair or deceptive act.

As previously stated, it was clear from the letter sent by Cavalry that Cavalry was the sole entity collecting on the account. Further, the letter sent by Suttell did not require Kelly to make payment to Cavalry SPV. Rather, it requested Kelly to contact Suttell's office to make repayment *arrangements*. Also, this letter was sent by Suttell, not Cavalry. It was also undisputed that Kelly never made a payment on the debt to Cavalry or otherwise, nor did he contact Cavalry to clarify the information in the letter. No argument was raised that Cavalry did not have the authority to collect on the debt or that another entity could collect on the debt based on this error. There was no confusion regarding the nature of the asserted obligation or any other material aspect of the letter. We conclude that Kelly's confusion regarding the error does not demonstrate material importance of the error.

Lastly, Kelly asserts that, per RCW 4.08.080, identifying the true owner of a purchased debt account is the most important part of the collections process and is, therefore, material to his claim. Cavalry argues that the statute is inapplicable to Kelly's CPA claim.

RCW 4.08.080 addresses assigned obligations and generally concerns who the proper parties are to actions. Kelly argues that the intent of the statute is to protect a consumer who is told that one company owns his account and is thereafter sued by another company; it is, therefore, important to correctly name the owner of an account in a collection notice. Cavalry, however, argues that the statute provides for an assignee of an obligation to, by virtue of the assignment, sue and maintain an action against the obligor or debtor. Cavalry further argues that it is not the assignee of Kelly's debt and it did not sue or maintain an action against Kelly. Since the statute is inapplicable to Kelly's CPA claim, we do not consider it when determining the material importance of Cavalry's act.

9

Kelly did not plead facts that, if proved, could show Cavalry's act mislead or misrepresented something of material importance. We conclude that because Kelly failed to establish the first element of his CPA claim by being unable to show that Cavalry's act was unfair or deceptive, the trial court did not err in dismissing Kelly's CPA claim.

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Maxa, A.C.J.