# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEAN HAGEL and BRIAN HAGEL, individually and as husband and wife, | No. 86865-9-I |
| Respondents, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| DUKE N. BUI and CASSIDY T. BUI, individually and as husband and wife; and QUANG BUI, in his separate capacity, and the marital community comprised of QUANG BUI and TRINITY BUI, husband and wife, | |
| Appellants. | |

BIRK, J. — In this appeal, the Buis challenge the trial court's order interpreting the parties' shared use agreement and granting injunctive relief restricting use of the parties' shared dock. We conclude certain of the trial court's findings of fact were not supported by substantial evidence and certain conclusions of law were not justified, and because of this, the trial court abused its discretion by granting an injunction beyond the scope of proven breaching conduct. We affirm in part, reverse in part, and remand to the superior court with instructions to enter a revised final order as delineated herein.

I

Respondents Jean and Brian Hagel and appellants Duke and Cassidy Bui own neighboring waterfront homes on American Lake in Lakewood, Washington.

The Hagels purchased their property in 2001 and have resided on it since 2003. The Buis purchased their property in 2012. The properties share a dock that straddles the property line, the access, use, and maintenance of which is governed by a 2002 easement and maintenance agreement (Agreement). The Agreement, which runs with the land, was originally signed in 2002 between the Hagels and Kevin and Mary Byrne, then owners of the Bui property.

The Hagels and the Buis shared use of the dock without issue until 2020. In July 2021, the Hagels filed a complaint against the Buis seeking, among other relief, injunctive relief and enforcement of the Agreement. They alleged the Buis had violated the Agreement by leaving floating devices in front of the Hagels' "side" of the dock, adding a dock extension without the Hagels' consent, "claiming the entire dock for themselves," placing furniture on the dock, and leaving their personal property on the shared dock. The Hagels also alleged numerous instances of conflict, both verbal and physical, between their adult son and the Buis and their guests. Before trial, the court denied the Buis' motion for summary judgment, CR 12(b)(6) motion to dismiss, and motion in limine to exclude extrinsic evidence testimony.

At trial, the Hagels argued the Buis held frequent parties, occasionally launched illegal fireworks from on or near the dock, blocked or impeded access to the dock with outdoor furniture and personal property, moored numerous "boats" and floating devices to the dock, and harassed the Hagels and their adult son. This behavior, the Hagels alleged, had led them to discontinue use of the dock during the pendency of the lawsuit. As a remedy, the Hagels sought an injunction

2

limiting use of the dock consistent with the Agreement and declaratory relief defining the scope of the Agreement.

At the bench trial, the Hagels called Kevin Byrne to testify about the "intent" behind the Agreement. Byrne was the prior owner of both the Hagels' and Buis' properties, the developer of the housing tract, and one of the original signatories to the Agreement. The court also heard testimony from Brian and Jean Hagel, neighbor Mary Hudson, and Duke Bui. The Buis intended to call other witnesses "to rebut credibility and to rebut the customary and normal use of the dock, which is at issue." But the court excluded all 11 of these witnesses, neighbors with similar docks and witnesses to the Hagels' past dock use, as being cumulative or unhelpful. Despite Byrne's testimony that all the docks on American Lake constructed at the same time had the same shared dock agreements, the court reasoned that "[w]hat the neighbors do . . . is [not] terribly relevant." And the court said the Hagels' past dock use was not relevant because "[the Hagels] hadn't read [the Agreement]" until litigation began.

The court ruled in favor of the Hagels, granting an injunction and entering findings of fact and conclusions of law. The Buis appeal.

II

The Buis claim their CR 12(b)(6) motion to dismiss should have been granted by the trial court due to the Agreement's indemnity and hold harmless provision. We disagree.

3

A trial court's ruling on a CR 12(b)(6) motion is reviewed de novo. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014).

Under the Agreement's indemnity and hold harmless provision, the parties agreed to hold each other harmless from claims "arising in any manner from the existence or use of this easement or the dock." The Buis brought a CR 12(b)(6) motion to dismiss, arguing that the Agreement barred the Hagels from bringing any claims against the Buis related to the dock. However, courts do not generally interpret hold harmless provisions to bar claims brought by parties to the agreement seeking its enforcement. City of Tacoma v. City of Bonney Lake, 173 Wn.2d 584, 593, 269 P.3d 1017 (2012). Otherwise it "would produce the absurd result of precluding a party to a contract from disputing its obligations under that contract." Id. Interpretations that give effect to all provisions in a contract are favored over those that render some meaningless or ineffective. Pelly v. Panasyuk, 2 Wn. App. 2d 848, 865, 413 P.3d 619 (2018).

Under the Buis' interpretation, the parties' obligations under the Agreement would be entirely unenforceable in court. Such a result would be absurd. The Hagels' claims are properly understood as arising from the Agreement, which we presume the parties intended to make enforceable. Because the Hagels' claims seek enforcement of the parties' obligations under the Agreement, the trial court properly denied the Buis' CR 12(b)(6) motion.

III

The Buis appeal the trial court's order denying them summary judgment. They assert that the dispositive issue in the case was entirely one of law, contract interpretation, and that no material facts were in dispute between the parties. However, there were material facts in dispute, such as whether the Buis ever blocked the Hagels' access to the dock. When an order denying summary judgment is based on a dispute of material facts, "it 'will not be reviewed when raised after a trial on the merits.' " 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 715, 281 P.3d 693 (2012) (quoting Johnson v. Rothstein, 52 Wn. App. 303, 306, 759 P.2d 471 (1988)). As the case proceeded to trial, we decline to review the denial of summary judgment.

IV

The Buis contend that the trial court erred by improperly using extrinsic "intent" evidence to add to or modify the terms in the Agreement. And if the trial court properly admitted extrinsic evidence bearing on the "intent" behind the Agreement, the Buis assert that the trial court erred by disallowing their extrinsic evidence witnesses. We agree.

The rules of contract interpretation apply to the interpretation of an easement. Pelly, 2 Wn. App. 2d at 864 (citing Hollis v. Garwall, Inc., 137 Wn.2d 683, 695-96, 974 P.2d 836 (1999)). Washington courts follow the objective manifestation theory of contracts. Id. at 865. " 'Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties.' " Id.

(quoting Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005)). Courts impute ordinary and reasonable meanings to the words in a contract, unless the agreement clearly demonstrates a contrary intent. Id. The interpretation of an easement is a mixed question of law and fact. Hurlbut v. Crines, 14 Wn. App. 2d 660, 667, 473 P.3d 263 (2020). " 'If the plain language is unambiguous, extrinsic evidence will not be considered.' " Id. (quoting Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003)). "When there is specific, unambiguous language creating an easement, that language may be determinative of the permitted uses and, thus, the parties' intent as to its scope." Wilson & Son Ranch, LLC v. Hintz, 162 Wn. App. 297, 306, 253 P.3d 470 (2011).

The three provisions in the Agreement the court sought to clarify through its order were

>    1.    Hagel and Byrne grant to each other, and to their respective successors and assigns, *an easement for ingress and egress to the dock* to be constructed. . . .
>
> . . . .
>
>    4.    No more than one *boat* shall be moored on *each side* of the dock.
>
>    5.    Each party shall use the dock in a *reasonably prudent manner consistent with its purposes as a shared recreational amenity* to each of the Properties and to prevent harm or *unreasonable disturbance* to the parties, their guests, and invitees, and to other property owners within the plat of Eagle Point at American Lake. Each party shall take reasonable steps to assure that the conduct of his or her guests and invitees is consistent with this paragraph.

(Emphasis added.) Over the Buis' objections, the trial court admitted Byrne's testimony as extrinsic evidence bearing on these terms.

6

Byrne gave testimony purporting to define the parameters of these written provisions of the Agreement. He stated the dock's use was meant to be limited to getting to and from the moored boats. Asked whether it was the intention of the parties to "hang out on the dock without utilizing the boats," he replied, "No. Because it wasn't a party center. It was an access to get to a boat." The intent of the agreement was to limit each party to their respective "side" of the dock, that is the side that lines up with the respective properties. His "vision" for what would qualify as a "boat" was if it floats "[i]t's a boat." Personal property was not meant to be left on the dock. The dock was not meant to be used for parties, swimming, or setting off fireworks. He summed up his restrictive understanding of the Agreement:

> I guess you can draw up an agreement from a positive standpoint or an initial negative standpoint. This was an agreement that outlined what could be used. It did not then list the hundreds of other things that [maybe] it couldn't be used for. So it outlined the use, and the use was for one boat moored on each side of the dock.

Drawing in part on Byrne's testimony, the trial court entered its final order deeming the Agreement to impose on the parties and all future owners rules that (1) the parties were limited to attaching to the dock one boat "broadly" defined "to include any craft that . . . floats" including "floating lilly pads or mats," (2) each party's moorage was restricted to the side of the dock lining up with its property, (3) no property could be left on the dock "except for the purpose of ingress and egress onto and off of" the parties' boats, (4) fireworks were prohibited, (5) the dock may be used for swimming, (6) each party may have up to seven persons each at a

7

time on the dock at any one time, and (7) the parties' use of the dock shall be "respectful to the other parties who are using the dock."

None of the restrictions or definitions described in Byrne's testimony or the trial court's final order were written into the Agreement anywhere. The Agreement grants an easement across the land in front of the dock for the explicit use of "ingress and egress." The original contracting parties could have written in similar restrictions related to the use of the dock, but instead opted for language allowing mooring of one "boat" on each side of the dock, without restrictive definitional language, "reasonably prudent" use "consistent with its purpose as a shared recreational amenity," and prohibiting "unreasonable disturbance." These words are plain, unambiguous, and subject to ordinary and reasonable meanings, not the unexpressed subjective intent of Byrne.

Citing Berg v. Hudesman, 115 Wn.2d 657, 667, 801 P.2d 222 (1990), the Hagels defend the trial court's reliance on Byrne's testimony as a proper application of the "context rule." The context rule recognizes "that intent of the contracting parties cannot be interpreted without examining the context surrounding an instrument's execution." Hearst, 154 Wn.2d at 502 (citing Berg, 115 Wn.2d at 667). However, the Hagels' reliance on Berg is misplaced, as "surrounding circumstances and other extrinsic evidence are to be used 'to determine the meaning of specific words and terms used' and not to 'show an intention independent of the instrument or to 'vary, contradict or modify the written word.' " Hearst, 154 Wn.2d at 503 (quoting Garwall, 137 Wn.2d at 695-96). "We do not interpret what was intended to be written but what was written." Id. at 504.

8

Byrne's testimony improperly contradicted, modified, and added to the written word.  By the Hagels' own admission, Byrne's interpretation of the Agreement even contradicted their use of the dock.  Notably, proper extrinsic evidence would have included "the subsequent acts and conduct of the parties" and "the reasonableness of respective interpretations urged by the parties." Hearst, 154 Wn.2d at 502.  This included the parties' actual use of the dock over their many years of uneventful shared use—not to justify arbitrary, unagreed rules—but to explain in these parties' circumstances the meaning of the agreed requirements of prudent use, shared recreation, and unreasonable disturbance. The trial court severely limited that evidence in a manner benefiting the Hagels by discounting the importance of the parties' actual usage, which the Buis maintained contradicted the Hagels' claims about the Agreement, and by accepting at face value the Hagels' claim that they had not read the Agreement while ignoring that they had signed it.  The trial court erred when it relied on Byrne's testimony to add restrictions to the Agreement on which the parties never agreed.

V

The Buis challenge 24 of 47 findings of fact as being unsupported by substantial evidence, and 17 of 24 conclusions of law as being unsupported by the findings of fact.  We concur with many, but not all, of the Buis' challenges.[1]

We review findings of fact for substantial evidence, "defined as a quantum of evidence sufficient to persuade a fair-minded person the premise is true."

---

[1] We note that many of the findings of fact restate assertions of the parties and witness testimony.  We focus our analysis on those findings of fact that, in reliance on the evidence presented, determined the legally significant facts.

9

Sunnyside, 149 Wn.2d at 879. Conclusions of law are reviewed de novo. Id. at 880. " 'Where the findings are supported by substantial evidence, the question is whether they support the conclusions of law.' " Hurlbut, 14 Wn. App. 2d at 667 (quoting Nejin v. City of Seattle, 40 Wn. App. 414, 418-19, 698 P.2d 615 (1985)).

The trial court erred when it entered findings of fact and conclusions of law regarding the ownership of two extensions added to the original dock. The trial court entered an order assigning ownership of certain extensions and determining the application of the Agreement to the extensions. But both parties agreed that these issues were not pleaded or put at issue. The Buis told the trial court that had the issue been pleaded, they would have put on different evidence. Despite that, the trial court stated that the "un-refuted evidence . . . not even somewhat challenged" supported its finding of dock extension ownership. The reason the evidence was not challenged is that the Hagels had not provided the Buis notice before trial that the issue of ownership would be tried. CR 15(b) provides a mechanism for litigating issues at trial not pleaded previously. Mukilteo Ret. Apts., LLC. v. Mukilteo Invs., LP, 176 Wn. App. 244, 255-56, 310 P.3d 814 (2013). Issues not raised in the pleadings may be tried by the express or implied consent of the parties. Id. at 256; CR 15(b). The issue of dock extension ownership was not raised in the pleadings, was not the subject of a CR 15(b) amendment, and was not tried with consent. We therefore vacate the trial court's findings of fact and conclusions of law on the issue of dock ownership, specifically findings of fact 18, 21-25, 33, 43-47 and conclusions of law 52 and 64-68.[2]

---

[2] We note that finding of fact 43 is listed as a second "42."

The Buis challenge several findings of fact and related conclusions of law to the extent the trial court found intent in the Agreement to limit use of the dock in specific ways. Testimony cannot " 'vary, contradict or modify the written word.' " Hearst, 154 Wn.2d at 503 (quoting Garwal, 137 Wn. 2d at 695-96). Because Byrne's testimony was used improperly to modify the written word, it follows that the trial court's findings of facts and conclusions of law adopting new restrictions on the use of the dock to which the parties never agreed were unsupported by substantial evidence. These restrictions include limiting the parties' dock use to specific "sides" of the dock (finding of fact 35, conclusion of law 58), broadly defining the term "boat" under the agreement (finding of fact 36, conclusion of law 59), prohibiting personal property on the dock (findings of fact 38-39, conclusion of law 61), and limiting the number of occupants on the dock at any time (finding of fact 42, conclusion of law 63). We vacate findings of fact 35-36, 38, 39, and 42, and we reverse conclusions of law 57-59, 61, and 63. As described below, the trial court's remaining findings of fact and conclusions of law are supported by substantial evidence or are otherwise unchallenged by the Buis.

VI

The Buis appeal the scope of the trial court's injunction, which imposed significant restrictions on the parties' use of the dock. We agree that the scope of the injunction was too broad and enjoined conduct not comprehended by the Agreement and without relieving a proven breach by the Buis.

We review decisions to grant injunctions, and their terms, for abuse of discretion. Snyder v. Haynes, 152 Wn. App. 774, 780-81, 217 P.3d 787 (2009). A

trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Id. at 781. "Trial courts have broad discretionary power to fashion injunctive relief to fit the particular circumstances of the case before it." Id. "Injunctions must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches." Kitsap County v. Kev, Inc., 106 Wn.2d 135, 143, 720 P.2d 818 (1986). Injunctions can be appropriate to enjoin "incidents" of "rare" conduct by parties to an easement agreement. See Snyder, 152 Wn. App. at 781 (unauthorized use of easement road was "rare" but the trial court's determination to enjoin conduct was affirmed).

The Agreement requires the parties' use of the dock to be "reasonably prudent" in a "manner consistent with its purposes as a shared recreational amenity." And the parties agreed to "prevent harm or unreasonable disturbance to the parties." Any injunction must be tailored to remedy specific conduct breaching these provisions. Based on the findings of fact supported by substantial evidence and those conclusions of law that follow, the Hagels established at trial that the Buis breached the Agreement in four ways. First, the Buis launched fireworks from the dock and the easement in a manner the trial court found based on admissible evidence was inconsistent with sharing the dock as a recreational amenity. Second, the Buis left a floating "lily pad" in the water that blocked the Hagels' son from navigating to the Hagels' usual mooring, thus actually interfering with the Hagels' use of the dock. Third, an invitee of the Buis once dangled from the Hagels' boat lift, which Duke Bui conceded was not prudent use. Fourth, during one of the Buis' parties, the Hagels had to "walk over some of [the Buis'] guests"

12

to get to their boat, another actual interference of the Hagels' use of the dock. These breaches were properly subject to being enjoined, but the trial court abused its discretion by granting injunctive relief going beyond them. We remand with instructions to the trial court to enter a revised final order confining relief to enjoining the parties and their invitees from (1) launching fireworks from the dock or easement area in such manner as to prevent others from using the dock, (2) attaching devices to the dock unreasonably blocking navigation to and from usual moorings, (3) clinging to or from any boat lifts, and (4) crowding the dock in a manner that unreasonably restricts the other party's use of the dock. The trial court's final order and injunctive relief is otherwise reversed.[3]

VII

The Buis raise three other issues on appeal: they argue the trial court erred in denying their motion in limine to exclude issues they allege were not previously pleaded, they claim the trial court failed to fulfill its obligation to balance the equities before granting injunctive relief, and they request attorney fees.

We review rulings in limine for abuse of discretion. Singh v. Zurich Am. Ins. Co., 5 Wn. App. 2d 739, 753-54, 428 P.3d 1237 (2018). The Hagels sought relief in the form of a court order interpreting and enforcing the Agreement. The scope

---

[3] We also specifically reverse the trial court's final order to the extent it provided "the Plaintiffs and Defendants may agree, in writing, to modify the terms of this final order at any time." The parties are not free to modify at will a final injunction entered by the court. They are free to modify their Agreement. If they do so, and if appropriate in the future, either party may seek relief from the judgment pursuant to CR 60, in particular CR 60(b)(6), but the parties may not obtain new relief without initiating an action proving entitlement to relief under the rules of civil procedure.

of relief requested in the Hagels initial complaint was for an order and injunction "preventing the [Buis] and their guests from violating the [Agreement]." The court did not abuse its discretion in allowing the Hagels to raise requests for relief that were within the scope of relief requested in their complaint.

In considering whether to grant an injunction, trial courts may "consider and weigh equitable factors, such as the relative hardship likely to result to the defendant if an injunction is granted and to the plaintiff if it is denied." Garwall, 137 Wn.2d at 699. However, balancing of the equities is "reserved for the innocent defendant who proceeds without knowledge or warning that his activity encroaches upon another's property rights." Id. at 699-700. Here, as in Garwall, the Buis continued with their use of the dock even after the Hagels had objected to it. Injunctive relief as narrowed above was appropriate.

The Buis claim attorney fees on their CR 12(b)(6) and summary judgment issues on appeal. As the Buis did not prevail on either issue, their request for attorney fees is denied.

We affirm in part, vacate specified findings, reverse in part, and remand with instructions to revise the final order as stated herein. Attorney fees are denied. The parties shall bear their own costs.

_Birk, J._

WE CONCUR:

_Díaz, J._

_Smith, C.J._

14